Brent Thomas **GORDON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 560–89.

Court of Criminal Appeals of Texas, En Banc.

Dec. 12, 1990.

C.E. Clover, Jr., Sealy, for appellant.

Peter C. Speers, III, Dist. Atty., and Thomas D. Glenn, Asst. Dist. Atty., Conroe, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted of aggravated sexual assault and a jury assessed punishment at 10 years confinement in the state penitentiary probated for 8 years and a fine of $8000.00. V.T.C.A. Penal Code, § 22.021. The trial court assessed a term of not more than 120 days and not less than 60 days in the penitentiary as a condition of probation based upon the jury's

affirmative finding that appellant used or exhibited a deadly weapon in the commission of the offense. Article 42.12, § 3g(b), V.A.C.C.P. The conviction was affirmed on direct appeal. *Gordon v. State*, 767 S.W.2d 866 (Tex.App.—Eastland 1989). This Court granted appellant's petition to review three grounds: (1) whether the Court of Appeals misapplied the ruling in *Vallejo v. State*, 408 S.W.2d 113 (Tex.Cr. App.1966) by holding it is unnecessary for an affidavit in support of an arrest warrant issued under Chapter 45 of the Code of Criminal Procedure to be supported by facts stating probable cause; (2) whether the appeals court erred in applying Article 38.23(b), V.A.C.C.P., to the instant case since the evidence in question was obtained prior to the effective date of that statute; and (3) whether the Court of Appeals misapplied this Court's ruling in *Black v. State*, 739 S.W.2d 240 (Tex.Cr.App.1987) by holding the prohibition against pretext arrests applies only to warrantless arrests and not to pretext arrests purportedly made pursuant to an arrest warrant.[1] After reviewing each ground, the judgment is reversed and the cause remanded for further consideration in light of this opinion.

Law enforcement officials in Hempstead suspected appellant of committing the robbery and sexual assault of a woman employed as office manager of the Hempstead Veterinary Clinic, but lacked probable cause to arrest and charge him with the crimes. Thereafter, police discovered the existence of an outstanding arrest warrant issued upon appellant's failure to appear before the municipal court in Deer Park. Based on this warrant, appellant was arrested, his apartment was searched, and appellant was interrogated regarding the robbery and sexual assault. The instant prosecution followed.

The record reflects evidence in the case consisted in the main of testimony of the complainant and videotaped and written confessions the defendant provided during his interrogation. On April 3, 1987, complainant was alone inside the veterinary clinic when a young Afro–American male entered through the front door and walked up to the counter where she was sitting. The complainant described the man as clean cut, in his early to mid-twenties, wearing a baseball cap and red-rimmed sunglasses. The man pulled out a small, silver-colored automatic pistol and announced, "this is a robbery, give me your money but turn around and don't look at me." The robber was given all the money the clinic had in the cash box, about $35.00. He then made the complainant lock both front and rear doors and ordered her to give him the money in her purse as well as her driver's license. The complainant testified the robber wanted the latter article "so I can find you if you tell the police about me." The offender then had the complaining victim take him to the rear of the building and into a bathroom, where he forced her to bend over the toilet while he raped her. Afterward, the man told her to remain inside the bathroom for ten minutes after he left and to tell the police she had been assaulted by a "guy six-foot tall, white man with a beard ... not a black man." The victim waited about five minutes before calling the police. The victim testified she got only a glimpse of her attacker due to his repeated admonishments to her not to look at him, reinforced by his holding the pistol to the side of her head during the ordeal. Although she was not able to positively identify appellant as the perpetrator, she did state there were no noticeable differences in appearance between appellant and her attacker, and it was certainly possible that he was the man who robbed and raped her on the day in question.

The State also introduced a confession given by appellant subsequent to his arrest:

On April 3, 1987, I walked from the Apt. # 31 were (sic) I live down 5th Street to the Hempstead Vet. Clinic. I walked in the front door, I saw a female sitting

1. *See* TEX.R.APP.P. 200(c)(3).

behind the counter. I walked up, pull (sic) a pistol out, I ask her were (sic) the money was and give it to me. I told the female to put her head down, not to look at me. After I got the money I told her to go into the bathroom. Inside the bathroom I told the female to take her close (sic) off. Once she remove (sic) her clothes I decide to assault her. I told the female to bend over. I had a problem at first penetrating (sic) the female but I finally did so. I do remember I opened the bathroom window, I did this so I could hear if anyone came in. I also took the money out of her purse and I took her Drivers Lic. (sic). I told the female I'm taking the drivers lic. so if you tell the police I know who you are. I told the female to describe me as a w/m, I can't remember what else. I left out the back door, ran down 5th street towards (sic) Bremond, I turned left on Bremond. While I was running I thru (sic) the females Drivers Lic. into the field on Bremond & 5th Street, Hempstead.

In the main it was this confession that was the object of appellant's motion to suppress which was subsequently denied.

Appellant's first two grounds for review are argued together, and both relate to the validity of the warrant and its execution. In his third ground for review, appellant contends the appeals court misapplied our *Black* decision by holding the prohibition against "pretext arrests" applies solely to warrantless arrests. The essence of appellant's claim is that his arrest by warrant was a pretext arrest, in that the arresting officers used a warrant for a minor traffic offense and failure to appear thereunder as a pretext to conduct what otherwise might be construed an impermissible search. We will begin by examining appellant's third ground in the context of what this and other courts have termed "pretext" seizures.

## I.

So-called "pretext" seizures by law enforcement authorities may be broadly categorized as (1) those involving administrative or regulatory stops which lack initial suspicion of wrongdoing on the part of the detainees, *see Webb v. State*, 739 S.W.2d 802 (Tex.Cr.App.1987); *Boyle v. State* (Tex. Cr.App. No. 69,743, Oct. 4, 1989, rehearing granted); *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App.1985), and cases cited therein; and (2) those situations in which an individual is suspected of having committed a criminal act and is either temporarily detained for investigation or arrested. In this latter category, the act or crime for which the person is suspected of committing is almost always different from the conduct allegedly committed which forms the basis for the detention or seizure. *See generally United States v. Causey*, 834 F.2d 1179 (5th Cir.1987) (*Causey II*); *Black v. State*, supra, and cases therein cited. It is this latter type of "pretext" arrest that forms the basis of the instant appeal.

█ Appellant is correct when he contends the Court of Appeals attempted to distinguish *Black* from the case at bar for the reason seizure in that case was made without a warrant. The appeals court then went on to cite *Causey* for the proposition the police had lawfully arrested appellant under auspices of a valid warrant and therefore their conduct was not "objectively unlawful." As to the applicability of *Black*, we do not see presence of a warrant to change the basic proposition embodied in that case, to wit: "an arrest for one crime is not permitted to be used as a pretext to search for evidence of another." *Black v. State*, 739 S.W.2d at 243. This is not to say the above proposition may be viewed in a vacuum; indeed, as will be seen *infra*, the foundation upon which the pretext doctrine was espoused in *Black* was never firm, and has since crumbled beneath the weight of reason and logical analysis of authority previously espousing the doctrine so as to become suspect. However, we do not believe the pretext doctrine, as applied through the Fourth Amendment, should have any less an impact on searches or

seizures conducted pursuant to a warrant than on those conducted *sans* warrant.

The origin of the doctrine or theory is generally accorded the Supreme Court decision in *United States v. Lefkowitz*, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932). Pursuant to an arrest warrant, federal agents arrested a suspect in a partitioned office that was ten feet by twenty feet. They searched the room extensively, including waste baskets, closed desk drawers, and closed cabinets. Books, papers and other articles were seized as evidence of the offense. The Court stated, "[t]he only question presented is whether the searches of the desks, waste baskets and of all drawers and closed cabinets and the seizure of the things taken from them were reasonable as an incident of the arrests." *Id.* at 463, 52 S.Ct. at 423. The Court answered the question negatively by circumscribing the scope of a proper search incident to arrest. Holding the search and seizure violated the defendant's Fourth and Fifth Amendment rights, the opinion then closed with the dictum later used as authority in *Black:* "An arrest may not be used as a pretext to search for evidence." *United States v. Lefkowitz*, 285 U.S. at 467, 52 S.Ct. at 424.

Any examination of this precedent-setting dictum must be viewed within the context of the *Lefkowitz* case. There, the defendant was not arrested by officers whose real motivation, however weighed, was to engage in a search for evidence of another, more serious crime. Both the arrest and search involved but a single crime, whether measured by the objective or subjective conduct of the officers participating in the arrest and subsequent search. The facts of the case demonstrate no "pretext" or subterfuge; rather, there was a general search for evidence of the offense under warrant which was deemed impermissible due to the scope of the search by authorities.[2] The *Lefkowitz* case is not, in fact, authoritative or instructive to the question of what constitutes a "pretext" search or seizure; later opinions from this and other jurisdictions which cited the case as authority fail to recognize the distinguishing characteristics of that case and the treatment afforded the case by the Supreme Court[3]. If *Lefkowitz* had condemned a search that was within the letter of the law because the officer's "true motive" in making the arrest was to engage in an unconstitutional search, the Court would have had to explore the officer's motive for making the arrest. The opinion contains no discussion in examination or condemnation of these motives. Moreover, if such had been the intent of the Court, after *Lefkowitz*, a search as extensive and intrusive as the one conducted in that case would have been proper as long as the officer's motives in making the arrest were "true." This reading is wholly inconsistent with the language in *Lefkowitz* condemning the search *because of its scope*.

In *Black*, a case in which a plurality of the Court joined Judge Miller's reasoned opinion, the defendant was under suspicion of murdering another man. Surveillance was established across the street from the defendant's apartment. When Black left the apartment in a friend's car, officers followed and observed him commit several traffic violations. The police arrested him, and thereafter told him they wanted to talk to him about the homicide.

After initially determining that police lacked probable cause and therefore could

---

**2.** Some seven years before, in a similar situation, the Court had invalidated an overly-broad search occurring subsequent to arrest. In *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), there was but a single offense: possession and delivery of cocaine. After Agnello was arrested at one residence, federal agents proceeded to his own residence where they, sans warrant, searched and discovered a quantity of cocaine. The search was held improper on appeal for being beyond the proper scope, without recourse or reliance on any "pretext arrest", subterfuge or sham seizure.

**3.** *Lefkowitz* can best be described as a precursor to the Supreme Court's later decision in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The case was used as precedent for the search incident to arrest analysis used in the later case.

not have arrested Black for murder, the Court proceeded to "the question of whether appellant's arrest for traffic violations was used as a pretext to either question him about or search for evidence of a murder." [4] We cited the *Lefkowitz* dictum noted *ante* and then broadly stated: "When an arrest is used as a pretext, it is an illegal arrest and evidence discovered as a result of it may not be used at trial." *Id.* at 244. It was then noted the "issue" of pretext arrest had been "recognized" in *Gutierrez v. State*, 502 S.W.2d 746 (Tex.Cr.App.1973) [record supports trial court findings that arrest of appellant for public intoxication was legal and not pretext to retain him for questioning about murder], and *McDonald v. State*, 415 S.W.2d 201 (Tex.Cr.App.1967) [record did not support appellant's contention his arrest for vagrancy was pretext to allow search for stolen property]. In contrast to those two cases, the officers arresting Black "admitted that they knew before they arrested appellant that he was a suspect in a murder investigation. They also admitted that they stopped him *to question him about the murder.*" *Black v. State*, 739 S.W.2d at 244 (emphasis in original). Thus, because of the apparent predisposition of the authorities in suspecting Black of murder before his arrest on other charges was effectuated, as shown by the testimony of the arresting officer "admitt[ing] that the reason appellant was arrested was to question him about the homicide", we invalidated the arrest and concluded the defendant's subsequent confession should have been excluded:

> The facts show that the officers did not try to get a warrant, but simply used the traffic violation as a pretext to get around the warrant requirement. Appellant's detention was, therefore, illegal.

*Id.* at 245. Our opinion did not stop at holding the particular arrest in *Black* im-

proper; in footnote two of the opinion we painted with an even broader stroke by overruling two recent cases which recognized the tension between Fourth Amendment concerns and objective police conduct:

> To the extent that *Bain v. State*, 677 S.W.2d 51 (Tex.Cr.App.1984) and *Dodson v. State*, 646 S.W.2d 177 (Tex.Cr.App. 1983) (opinion on State's Motion for Rehearing) stand for the proposition that there can never be a pretext arrest when the defendant actually violated the traffic laws, they are overruled.

*Id.* at 245 n. 2.

The *Black* opinion, joined by only three members of this Court, depends in large part for its authority upon the Fifth Circuit case of *Amador–Gonzalez v. United States*, 391 F.2d 308 (5th Cir.1968), wherein a panel of the appeals court set out five criteria for determining whether a pretextual arrest occurred and then concluded the defendant's arrest for traffic violations was used as a pretext to search for drugs. *Amador–Gonzalez* did not hold "pretexual arrests" unconstitutional. Two of the three panel members concurred only in the result that the search in *that* case was unreasonable.[5] In defining the parameters of the holding, it was stated:

> The pretexual motivation did not vitiate the validity of the arrest.... Proof that a traffic arrest was only a pretext to search *for evidence of another offense is* significant legally *only because it bears on the reasonableness* of the search ... the emphasis is on the objective relationship between the nature of the offense and the nature (circumstances) of the search, *rather than on the motivational cause of the arrest* (emphasis added).

*Amador–Gonzalez v. United States*, 391 F.2d at 315. Far from being an overt indictment of a law officer's subjective intent, Judge Wisdom's notation reflects that

---

4. In a manner of speaking, this next question was already answered before analysis began. The form of the question begs the ultimate conclusion.

5. As Judge Wisdom noted, "they [Judges Coleman and Godbold] concur in the result ... [but] would refrain from passing upon the lawful scope of a search incident to a *valid* traffic arrest (emphasis added)." 391 F.2d at 315.

the true question to be answered is whether the search (or interrogation) following the arrest was reasonable, not whether officers were motivated by extraneous but valid reasons for arresting the person.

The "pretext arrest" issue was revisited by the Fifth Circuit almost twenty years later in *United States v. Causey*, 818 F.2d 354 (5th Cir.1987) (*Causey I*). An anonymous tipster identified Causey as the robber of a Baton Rouge bank, but police believed they lacked probable cause to arrest and interrogate the suspect. They discovered an outstanding warrant issued some years later for Causey's failure to appear in court to answer a petty theft charge. After verifying the warrant's validity, officers arrested Causey, gave him *Miranda* warnings, and interrogated him about the robbery. A confession was ultimately obtained.

In reliance on what was described as a "continuing line of Fifth Circuit authority," a panel of the Court concluded unless an arrest is made with the appropriate subjective intent, it is invalid and any fruits arising therefrom are "tainted." Thus, in addition to the constitutional requirement of a "knowing and voluntary" confession [6], and to the Supreme Court's requirement that a statement taken during custodial interrogation must be preceded by the *Miranda* litany of safeguards, the Fifth Circuit panel appended an additional requirement that the law enforcement personnel who take a suspect into lawful custody must not have made the arrest with an *improper motive*, whether their *conduct* in making the arrest would have been any different in the absence of such a motive or not. Simply put, the panel held that police conduct otherwise lawful in every respect is rendered unconstitutional by their irregular subjective intent.

Sensing "a possible conflict between this holding and sound constitutional policy, as well as possible inconsistency" with a decision by the Supreme Court, the Court of Appeals granted rehearing in *Causey*. In a section entitled "Reason", the en banc Court declined to accept the subjective intent standard. First, it was pointed out the panel's rule turned on "an irrelevant intent: that of the police." *United States v. Causey*, 834 F.2d at 1181. It is the prosecutor's job to determine whether a person arrested on a warrant will be prosecuted for that offense; the police are simply held to a duty of executing the warrant provided by the State through the offices of a magistrate.

Second, the Court found it difficult to determine what police misconduct was sought to be deterred by the rule. The police had used unlawful means to discover an outstanding warrant for Causey's arrest, executed a valid warrant, and had questioned Causey only after *Miranda* warnings were given. The subjective intent of the police in executing the warrant was not important to an analysis of the reasonableness of the arrest and subsequent interrogation. *Id.*

Finally, the en banc Court questioned the "motivational requirement" the panel sought to add to qualifications already laid down by the Constitution and Supreme Court in its *Miranda* decision for admissibility of a confession: voluntariness and administration of proper warnings. "To inject a new constitutional issue of subjective police intent into every case in which a suspect is arrested for one offense and later confesses to another (or others) seems to us unwarranted and to rest on no apparent constitutional basis or foundation." *Id.*

As the en banc Court noted, the panel opinion, while ostensibly relying on a "continuing line of 5th Circuit authority" as basis for its ruling,[7] apparently ignored the Supreme Court's pronouncements on the

---

6. U.S. CONST. Amend. V.

7. The panel relied on three decisions. The first was *Amador–Gonzalez*, which as we have stated *ante*, did not hold "pretexual arrests" unconsti-

tutional. The second case, *United States v. Tharpe*, 536 F.2d 1098 (5th Cir.1976) (en banc), merely cites *Amador* in a string cite. Its holding actually supports use of an objective standard in analyzing police intent. The third case,

issue. In three cases handed down since *Amador–Gonzalez,* the Supreme Court "has made plain that it is irrelevant what subjective intent moves an officer in taking such an action as this; what signifies is the officer's *actions,* objectively viewed in light of the circumstances confronting him." *Id.* at 1182. In *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), appellants complained police had deliberately disregarded the minimization requirements of wiretap law,[8] intercepting almost all calls on the tapped line although only forty percent of them were drug-related. The district court ordered the calls and all derivative evidence suppressed, offended by the "unreasonable" attitude of police who made no attempt to comply with the requirements. Upholding a reversal of the district court, the Supreme Court rejected this subjective view, instead embracing an objective assessment of the officer's conduct:

> We think the Government's position, which also served as the basis for decision in the Court of Appeals, embodies the proper approach for evaluating compliance with the minimization requirement. Although we have not examined this exact question at great length in any of our prior opinions, almost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him. The language of the Amendment itself proscribes only 'unreasonable' searches and seizures. In *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 [1879–80], 44 Ohio Ops.2d 383 (1968), the Court emphasized the objective aspect of the term 'reasonable.'

> \* \* \* \* \* \*

> We have since held that *the fact that the officer does not have the state of mind* which is hypothecated by the reasons which provide the legal justification for the officer's action *does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.* In *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, 66 Ohio Ops.2d 202 (1973), a suspect was searched incident to a lawful arrest. He challenged the search on the ground that the motivation for the search did not coincide with the legal justification for the search-incident-to-arrest exception. We rejected this argument: 'Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed.' *Id.* at 236, 38 L.Ed.2d 427, 94 S.Ct. 467 [at 477], 66 Ohio Ops.2d 202. The Court of Appeals which have considered the matter have likewise generally followed these principles, *first examining the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.*

*Scott v. United States,* 436 U.S. at 137–38, 98 S.Ct. at 1723 (emphasis added; footnote omitted).

Judge Rehnquist's majority opinion adopted what he called "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Scott,* 436 U.S. at 136, 98 S.Ct. at 1723. Under this approach, the Court analyzed what would have happened if the authorities had adopted guidelines designed to prevent the monitoring of non-target conversations without frustrating the purposes of the interception order. It was concluded the result would have been about the same. Agents would have termi-

---

*United States v. Cruz,* 581 F.2d 535 (5th Cir. 1978) (en banc), involved an *illegal* stop of a car full of aliens by police lacking either a warrant or probable cause. In its concluding statements, the en banc court overruled all three cases to the extent they "may have sought to lay

down a contrary rule for our Circuit." 834 F.2d at 1184.

**8.** *See* 18 U.S.C.A. § 2518(5).

nated the monitoring of few, if any, of the tapped conversations. *Id.* at 141–42, 98 S.Ct. at 1725–26.

The Supreme Court again rejected the line of reasoning which would vitiate an arrest based in part on "impure" motivation by reversing a panel of the 5th Circuit in *United States v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), and upholding the boarding of a sailboat by customs officers. The appellants claimed the officers, authorized by 19 U.S.C. § 1581(a) to inspect a ship's documents [9], could not rely on the statute because they were following an informant's tip that drugs were aboard the vessel and thus their supposed intent to inspect the boat's documents was merely a pretext to facilitate a true intent to apprehend drug smugglers. The Court disagreed in a footnote with the reminder, "[t]his line of reasoning was rejected in a similar situation in *Scott* …, and we again reject it." *United States v. Villamonte–Marquez,* 462 U.S. at 584 n. 3, 103 S.Ct. at 2577 n. 3.

Most recently, the Court upheld the *Scott* "bad faith" doctrine when addressing the issue in *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). In that case, a plainclothes detective entered an adult bookstore and purchased two magazines from the salesclerk with a marked $50 bill. The detective left the store and showed the magazine to other officers waiting nearby. Upon determining the magazines were "obscene," the detectives returned to the store, arrested the clerk on a charge of distributing obscene materials in violation of a state statute, and retrieved the $50 bill from the register without returning change from the purchase. The trial court denied a pretrial

motion to suppress on the grounds the purchase was not a seizure within the meaning of the Fourth Amendment. The jury subsequently returned a verdict of guilty to the charge. The respondent appealed, contending a prior judicial determination of probable cause to believe the matter distributed was obscene was required to sustain a seizure and an arrest on charges related to obscenity. The Maryland Court of Special Appeals reversed, agreeing a warrant was required both to seize allegedly obscene materials and to arrest the distributor in order to provide a procedural safeguard for the First Amendment freedom of expression. This was a "constructive" seizure and the proper remedy was to exclude the magazines from evidence at trial. The Maryland Court of Appeals denied certiorari. The Supreme Court granted certiorari to resolve a conflict among the state courts on the question whether a purchase of allegedly obscene matter by an undercover police officer constitutes a seizure under the Fourth Amendment.

The Supreme Court, in reversing the decision by the state court below, first found the risk of prior restraint, which is the basis for special Fourth Amendment protection accorded searches and seizures of First Amendment materials, does not come into play in cases where an officer or agent accepts an invitation to do business by entering upon property open to the public, and purchasing a few magazines out of the store's stock.[10] As to the argument by respondent that the bona fide nature of the purchase evaporated when the officers later seized the $50 bill and failed to return the change, because the officer's subjective intent was not to make a bona fide purchase as shown by retention of both the purchase and currency, the Court disagreed:

the discovery of contraband by liberalizing the usual threshold requirements for a search.

**9.** In fact, the statute does more than merely provide for inspection of a ship's documents. It authorizes warrantless searches of vessels in quest of contraband, without any requirement of either probable cause or reasonable suspicion. *See* 19 U.S.C. § 1581(a), (g) (1982). The Court expressly chose not to rule on the validity of this authority, but that section of the statute clearly demonstrates Congress's intent to aid in

**10.** The Court made a point to note a police officer may not engage in a "wholesale searc[h] and seizur[e]" in such circumstances. 472 U.S. at 470, 105 S.Ct. at 2782, citing *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 329, 99 S.Ct. 2319, 2326, 60 L.Ed.2d 920 (1979).

This argument cannot withstand scrutiny. Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' *Scott v. United States*, 436 U.S. 128, 136 [98 S.Ct. 1717, 1723, 56 L.Ed.2d 168] (1978), and not on the officer's actual state of mind at the time the challenged action was taken. *Id.*, at 138 and 139, n. 13 [98 S.Ct., at 1723 and 1724, n. 13]. Objectively viewed, the transaction was a sale in the ordinary course of business. The sale is not retrospectively transformed into a warrantless seizure by virtue of the officer's subjective intent to retrieve the purchase money to use as evidence.

*Maryland v. Macon*, 472 U.S. at 470–71, 105 S.Ct. at 2783.

■ In the face of such pronouncements by the Supreme Court, the 5th Circuit would not maintain a rule so contrary to that embraced by the Court, even if those decisions were not literally controlling. The relevant principle enunciated by the circuit is implied within the protection of the Fourth Amendment: *so long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry.*[11] *United States v. Causey*, 834 F.2d at 1184. According to the *Causey II* Court, the "correct" rule and its rationale is as follows:

> The correct rule is that, while a showing of objectively good faith on the part of the police officers will ordinarily redeem honest errors and prevent the application of the exclusionary rule, in a case where the officers have taken no action except what the law objectively allows their subjective motives in doing so are not even relevant to the suppression inquiry. And the reason lies in the purpose of that rule: to deter *unlawful* actions by police. Where nothing has been done that is

objectively unlawful, the exclusionary rule had no application and the intent with which they acted is of no consequence.

*United States v. Causey*, 834 F.2d at 1184–85.

■ As might be expected after the pronouncements of the Supreme Court, most circuits and commentators agree an objective rather than a subjective analysis is proper. *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988); *United States v. Archer*, 840 F.2d 567 (8th Cir.1988); *United States v. Miller*, 821 F.2d 546 (11th Cir.1987); *United States v. Hawkins*, 811 F.2d 210 (3rd Cir.), *cert. denied* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *United States v. Causey*, supra; 1 W. LE-FAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 1.4; Haddad, *Pretextual Fourth Amendment Activity: Another Viewpoint*, 18 U.MICH.J.L.REF. 639 (1985); Amsterdam, *Perspectives on the Fourth Amendment*, 58 MINN.L.REV. 349, 436–37 (1974). *Cf. United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir.1986) [whether arrest is mere pretext to search turns on motivation or primary purpose of arresting officers]; Burkoff, *The Pretext Search Doctrine: Now You See It, Now You Don't*, 17 U.Mich.J.L.REF. 523 (1984). There is a common sense reason underlying such recognition. The pretext doctrine lies at the junction of two distinct interests: that of the police in discovering or uncovering evidence of crime for purpose of prosecution, and the societal concern of privacy as shaped by the constitutional fabric of the system. An examination of a police officer's subjective intent in individual cases would unwisely involve the courts in unproductive inquiries where the officer has a cognizable theory for arrest and has not overtly abused the system of checks and balances within the Fourth Amendment. *See United States v. Arra*, 630 F.2d

---

**11.** As the Court of Appeals notes, "[e]ven in callings far less mundane this is the rule, it being a matter of general theological agreement that the mindset of the minister does not hinder the efficacy of the sacraments." 834 F.2d at 1184.

836, 845 n. 12 (1st Cir.1980) [recognizing that officers may simply adopt a proper purpose as the basis for their actions]. This is not to say the officer's conduct in effectuating the arrest is of no import; to the contrary, it must initially pass constitutional muster under an objective analysis.

■ Arbitrary or capricious conduct on the part of the authorities is unreasonable within the meaning of the Fourth Amendment. *See* 1 W. LaFave, *supra,* § 1.4(e), at 94–95. Where police authority is "unfettered", its exercise is constitutionally infirm and not amenable to objective review. *See Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) ["When ... a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits."]; *Delaware v. Prouse,* 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979) ["(S)tandardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed"]. On the other hand, where police conduct is objectively reasonable— i.e., passing constitutional scrutiny—an additional and necessarily selective review of the officer's "motivation" serves no valid purpose. Underlying the *Scott* doctrine is the sound notion, earlier expressed by a panel of the First Circuit Court of Appeals in *Massachusetts v. Painten,* 368 F.2d 142 (1st Cir.1966), that "sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources." Moreover, there is no guarantee courts can with any degree of success determine in a given case the "ulterior motives" of the police. As one commentator has noted:

> But surely the catch is not worth the trouble of the hunt when courts set out to bag the secret motivations of police in this context. A subjective purpose to do something that the applicable legal rules say there is sufficient objective cause to do can be fabricated all too easily and

undetectably. Motivation is, in any event, a self-generating phenomenon: if a purpose to search for heroin can legally be accomplished only when accompanied by a purpose to search for a weapon, knowledgeable officers will seldom experience the first desire without a simultaneous onrush of the second.

Amsterdam, supra, at 436–37. To the extent an officer's motivation for making an arrest can be enunciated, objective analysis requires that the subjective intent of the officer, absent other circumstances invalidating the arrest on constitutional or statutory grounds, is of no moment.

The discussion *ante* illuminates the basic fallacy underlying our adoption of a "pretext" doctrine which emphasizes the subjective motivation of police officers over the objective circumstances surrounding an otherwise valid arrest. As we have seen, the dictum in *Lefkowitz* has no applicability to a case in which an individual is arrested for one offense and questioned about another. That this dictum became authority for a subsequent line of federal circuit and state cases, including this Court's decision in *Black,* which were factually distinguishable from *Lefkowitz,* may be explained by reliance on the Fifth Circuit decision in *Amador–Gonzalez,* which appeared to expand the "pretext doctrine" to a stop for traffic violations and subsequent search for suspected drugs. As pointed out *ante,* however, two of the three Judges on the panel did not pass upon the lawful scope of a search incident to a *valid* traffic stop. The key there was that proof the stop was only a pretext to search for evidence of another offense was significant "only because it bears on the reasonableness of the search ... the emphasis is on the objective relationship between the nature of the offense and the nature (circumstances) of the search, *rather than on the motivational cause of the arrest." United States v. Causey,* 834 F.2d at 1182 n. 6, quoting from *Amador–Gonzalez v. United States,* 391 F.2d at 315. In *Causey,* the "search", comprised of a confession and objectively

viewed, was deemed "reasonable": the "nature" of his confession was reasonable since he was given *Miranda* warnings several times before he confessed. *See Scott v. United States*, supra.

■ Thus, although we believe the Court of Appeals erred in attempting to distinguish *Black* for the wrong reasons, their reliance on *Causey II* is both valid and proper. After analyzing the issue, we also believe our decision to overrule *Bain* and *Dodson* was incorrect.[12] Those cases stand for the proposition that if a valid stop is made for any reason (e.g., an actual offense) and the officer's objective conduct in response (i.e., search, questioning, transport) does not exceed the constitutional and statutory limits applicable to such a stop, additional subjective intentions, suspicions, or motivations on the part of the officers are irrelevant. In other words, as we have stated *ante*, although there may be other Fourth Amendment violations leading to suppression, there is no "pretext doctrine" applicable. To the extent *Black* stands for the proposition cited in *Amador–Gonzalez* but disavowed in *Causey*, it is overruled.[13]

To those who would raise the spectre of misuse of the legal process by permitting arrest on so-called "minor" violations for purpose of questioning a person suspected in another offense, *see Black*, supra at 244, citing *Adair v. State*, 427 S.W.2d 67, 71, 72 (Tex.Cr.App.1967) (Onion, J., dissenting), it should be remembered that the purpose behind the exclusionary rules of federal and state manufacture is to deter *unlawful* police conduct, not prevent the valid exercise of police authority in the interest of security. One passage contained in a *Causey* footnote explains the matter in terms relevant to the facts of the instant case:

> Part III of the dissent calls up the spectre of police combing the nation by computer to discover somewhere a delinquent parking ticket on the basis of which an arrest warrant can be obtained, an arrest made, and a custodial interrogation about an unconnected crime conducted. Assuming that these concerns are relevant to such a case as this—one in which the police arrested on an outstanding local warrant—a few observations seem to be in order.
>
> The first is that government need not authorize arrest for petty offenses and, if they do so, should not be startled if warrants issued pursuant to their authorizations are taken seriously and occasionally executed. Presumably all issued were meant to be executed or the time and effort to issue them would not have been spent. Other means are frequently employed in the case of parking tickets: means, for example, such as seizing or immobilizing the automobile of the offender. It is possible to enforce the law without arresting petty offenders. Should the public become sufficiently exercised about what the dissent views as abuse of such arrest warrants, it can direct such a course of enforcement; it is not necessary for us to read another troublesome, unstated provision into the Constitution to serve such an end.
>
> The second is that Causey, long before the police apprehended him, forfeited his right to be free from arrest. He was

**12.** Technically speaking, *Black* did not effectively overrule *Dodson* and *Bain*, as it was only a plurality opinion. As a result, the controversy between the "subjective" versus "objective" camps has been kept alive, hopefully resolved by this opinion.

**13.** Two later cases are worthy of mention. In *Boyle v. State*, —— S.W.2d —— (Tex.Cr.App. No. 69,743, delivered October 4, 1989, rehearing pending), a footnote in the majority opinion states the "pretext arrest" doctrine is still viable, citing *Black* in the face of *Causey*. To the extent that language conflicts with the opinion handed down today, it is expressly disavowed. We do note, however, that it is not necessary to do away with the concept of pretexual arrests; merely modify the analysis to fall into line with mainstream Fourth Amendment review.

We also note our decision in *Goodwin v. State*, 799 S.W.2d 719 (Tex.Cr.App.1990) wherein the conflict between *Black* and *Causey* was mentioned but the case was resolved without need to discuss the issue. Thus, *Goodwin* stands neither for nor against the adoption of the *Causey/Scott* standard.

already the object of an arrest warrant; he had been subject to arrest at all times since its issuance; and he can scarcely complain that the police finally got round (sic) to executing a valid warrant. The third is that there is no contention before us en banc that his interrogation did not fully comply with all constitutional requirements, so that for present purposes it must be assumed that the conduct of the police in that regard was impeccable and that Causey has received all that *Miranda* or the Fifth Amendment grants him.

This being so, he is reduced at this juncture to complaining that it was unreasonable for the police to arrest him on an admittedly valid warrant because of the subjective motive which moved them to pick it up and execute it: that he had caught their eye again by robbing a bank. Even so, the dissent would ride to his rescue; and it is this police action that the dissent intones 'violated the fourth amendment,' thus assuming the answer to the question that it poses.

*United States v. Causey,* 834 F.2d at 1185.

■ This Court has previously held the Texas Constitution does not impose any greater restrictions on police conduct than those imposed by the Fourth Amendment to the United States Constitution. *Eisenhauer v. State,* 754 S.W.2d 159, 162–64 (Tex.Cr.App.1988), *cert. denied,* 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988); *Osban v. State,* 726 S.W.2d 107, 111 (Tex.Cr.App.1986). This is not to say we shall merely "parrot" the opinions of the Supreme Court; but, where the federal and state constitutional provisions are in all material aspects the same, this Court is free to "follow the lead" of the Supreme Court where the position has a logical and equitable basis and it appears our own state interests will also be served. *See id.* at 164. So it is in the matter before us. As discussed *ante,* Fourth Amendment interests are better served by embracing an objective rather than subjective methodology of analyzing police conduct in effec-

tuating an arrest and questioning of a suspect. There is no reason, given our pronouncements in *Eisenhauer* and other cases, why we should attempt to provide a more restrictive standard under Article I, § 9 of the Texas Constitution than is required by the Fourth and Fourteenth Amendment. We therefore adopt for purposes of Article I, § 9 the objective standard enunciated in *United States v. Causey,* which is directly based upon the pronouncements of the Supreme Court in *Scott, Villamonte–Marquez,* and *Maryland v. Macon.* Appellant's complaint that his conviction should be reversed because the subjective intent of the police in arresting him was improper is therefore rejected. *Id.* Having decided *Black* does not control disposition of this case, however, we must nevertheless next examine appellant's arrest within a normal constitutional framework. To do that, we shall turn to his first two grounds for review.

## II.

■ In his first ground for review, appellant contends the Court of Appeals misapplied the ruling announced in *Vallejo* by holding it is unnecessary for the affidavit supporting the arrest warrant in this case to state sufficient facts as to constitute probable cause. In his second ground, hereinafter summarily sustained, appellant argues the appeals court erred in applying Art. 38.23, V.A.C.C.P., to find the affidavit sufficient, for the reason the statute did not go into effect until more than two months after the confessions were obtained. Appellant is correct that Art. 38.23(b) is not applicable because the evidence was obtained in his case in June, 1987 and the statute affects evidence obtained on or after September 1, 1987. We also note the appeals court was incorrect in finding the statute a codification of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), because Art. 38.23(b) requires a finding of probable cause, while the exception enunciated in *Leon* appears more flexible in allowing a good faith ex-

ception if the officer's belief in probable cause is reasonable. Thus, we must direct our attention to the validity of the warrant and affidavit without recourse to any "good faith" exception to the warrant requirement.

■ Specifically, appellant asserts the complaint upon which the warrant was issued is wholly conclusory, without containing any factual information to show the underlying basis of those conclusions. He points to the language in several opinions, including two from this Court, as being examples of affidavit language found legally insufficient to support a valid arrest warrant. In *Rumsey v. State*, 675 S.W.2d 517 (Tex.Cr.App.1984), the following language was held insufficient:

> I, Troy G. Braswell, ... state ... that I have personal knowledge and I charge that ... on or about the 4th day of April, A.D. 1980, ... Richard Emil Rubac did then and there intentionally and knowingly, unlawfully possess a controlled substance to-wit: lysergic acid diethylamide.

As in the instant case, the language in the *Rumsey* affidavit was conclusory. Judge McCormick, writing for a majority of the Court, noted the problem:

> The complaint or affidavit recites that the affiant had personal knowledge that the appellant, Rubac, possessed LSD. See and compare *Evans v. State*, 530 S.W.2d 932 (Tex.Cr.App.1976). However, no facts are alleged in support of the

averments to establish that the officer had personal knowledge of what he swore to. For example, it is not alleged that the officer saw Rubac in possession of LSD. The officer's 'personal knowledge' is but a conclusion which, like any other conclusion stated in an affidavit supporting a warrant must be supported by *facts*.

*Rumsey v. State*, 675 S.W.2d at 519 (emphasis in original).[14]

In *Green v. State*, 615 S.W.2d 700 (Tex. Cr.App.1981) *cert. denied* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981), the appellant complained his written statement should have been excluded from evidence because it was obtained pursuant to his illegal arrest, citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The complaint on which the warrant for Green's arrest issued, alleged:

> Before me, Tommy Turner, Assistant Criminal District Attorney of Lubbock County, Texas, this day personally appeared C.H. Blanchard, who, after being sworn, upon oath says that *he has good reason to believe and does believe and charge that one Leroy Green* ... on or about the 12th day of January, A.D. 1975, and before the making of this complaint in Lubbock County, and State of Texas, *did* then and there *intentionally and knowingly cause the death of an individual*, Warren Andrew McKay, *by shooting him with a gun* AGAINST

**14.** Police executed two arrest warrants for Rubac, who was tried together with Joyce Ann Rumsey. The supporting affidavit for the first warrant was found factually insufficient. However, the appellants failed to meet their burden to include the contested affidavit supporting the second warrant within the record on appeal, and because the warrant appeared regular on its face, we held that the presumption of validity applied to the warrant and upheld the conviction. *See Miller v. State*, 736 S.W.2d 643 (Tex. Cr.App.1987) [language in *Rumsey* commenting upon burden on accused to produce affidavit and warrant at trial and on appeal disavowed; after State first produces documents for ruling from trial court, appellant has burden to include documents in appellate record].

Based upon the same allegation of affidavit factual insufficiency, the appellants also challenged the admissibility of a quantity of marihuana seized from under Rubac's bed during the search conducted pursuant to a warrant obtained after Rubac declined the arresting officer's invitation to consent to a search of the apartment. In contrast to the first arrest warrant, we found the search warrant affidavit alleged sufficient facts to support a valid warrant, namely the officers effectuating the arrest had smelled the odor of marihuana in the apartment and discovered a burning marihuana cigarette in the bedroom where Rumsey was found.

THE PEACE AND DIGNITY OF THE STATE.

Analyzing appellant's complaint of an insufficient affidavit, an undivided panel of the Court, Judge Clinton writing, stated:

> It is instantly apparent that this affidavit consists of nothing more than Sheriff Blanchard's conclusion that appellant perpetrated the murder described in the complaint.
>
> \* \* \* \* \* \*
>
> Thus it is clear that '[t]he magistrate here certainly could not "judge for himself the persuasiveness of the facts relied on ... to show probable cause".' Judge Bolen necessarily accepted 'without question' Sheriff Blanchard's 'suspicion,' 'belief' or 'mere conclusion' that appellant committed the offense described in Blanchard's affidavit in the form of a complaint.
>
> . \* \* \* \* \* \*
>
> We are constrained to conclude that the affidavit before us provided Judge Bolen with no basis for an independent determination of probable cause and the arrest warrant that issued pursuant thereto, was invalid.

*Green v. State*, 615 S.W.2d at 705–06, citing as authority *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Knox v. State*, 586 S.W.2d 504 (Tex.Cr.App.1979); *Evans v. State*, 530 S.W.2d 932 (Tex.Cr.App.1975).[15]

More recently, in *Miller v. State*, 736 S.W.2d 643 (Tex.Cr.App.1987) (opinion on rehearing), the record contained an affidavit similar to the one at issue here:

> I, Venture Cerda, do solemnly swear that I have good reason to believe, and do believe and charge, that heretofore, on, or about the 25th day of March, 1982, in the County of Hildago and State of Texas, Wilfred Miller, hereinafter called Defendant, did then and there while, in the course of committing theft and with intent to appropriate property of Roberto Mora to wit: money, without the effective consent of the said Roberto Mora and with tent (sic) to deprive the said Roberto Mora of said property, did then and there by using and exhibiting a deadly weapon, to wit: handgun (sic) intentionally and knowingly place Rebbeca Ramirez in fear of imminent bodily injury.

Judge Duncan, writing for a unanimous Court, stated the following:

> Such an affidavit is insufficient to establish probable cause for a neutral and detached magistrate to issue an arrest warrant. This situation is very similar to that which this Court confronted in *Green v. State*, 615 S.W.2d 700 (Tex.Cr. App.1981). In *Green* the defendant was arrested pursuant to a warrant that was supported by a purportedly sufficient affidavit. The affidavit in the *Green* case and this case are identical in at least one particularly significant matter, they both contain the following language: 'he [the affiant] has good reason to believe and does believe and charge....' *Id.* at 705. Both affidavits then continue by the affiant merely reciting the statutory elements of the charged offenses—murder in the *Green* case and robbery in this case.
>
> In *Green*, the insufficient conclusory affidavit rendered the arrest warrant invalid because it was not issued in response to probable cause. We are compelled to reach the same conclusion in this case. There is no information in the affidavit of Officer Cerda, other than his mere conclusion that the appellant committed the robbery, on which a neutral and detached magistrate could even perceive,

---

**15.** The panel went on to determine the arrest could not be upheld under Article 14.01, et seq.; and that the connection between the appellant's unauthorized arrest and his incriminating statement obtained during custodial detention was not sufficiently attenuated to permit use of the statement at trial. *See Dunaway v. New York* and *Brown v. Illinois*, both supra.

much less accept, as probable cause. Consequently, the arrest warrant that was issued was invalid in that it was not supported by probable cause. Accordingly, the arrest of the appellant pursuant to the invalid arrest warrant was illegal.

*Miller v. State,* 736 S.W.2d at 647.

 In the instant case, without analysis, the Court of Appeals held the arrest warrant valid pursuant to *Vallejo v. State.* That case provides no authority to support this holding. In *Vallejo,* a complaint was filed in city court charging appellant Herman Vallejo with speeding. Appellant appealed his conviction by trial de novo in county court and upon conviction there, to the Court of Criminal Appeals. Appellant complained, citing *Giordenello v. United States, Aguilar v. Texas,* and *Barnes v. State,* 390 S.W.2d 266 (Tex.Cr. App.1965), that the complaint did not meet due process requirements or his Fourth Amendment rights because the complaint was not based upon probable cause. In a Commissioner's opinion approved by the Court, the argument was rejected:

> These cases relate to the necessity of stating facts constituting probable cause in a complaint or affidavit for the issuance of a warrant of arrest used as a basis for a search, or a search warrant, and have no application in a complaint made in corporation court as the basis of a criminal prosecution.
>
> *No warrant of arrest was issued upon the instant complaint, and the sole question is whether it is sufficient to charge an offense.* The answer is 'yes.'

In *Vallejo,* we were concerned with a complaint used as a misdemeanor charging instrument, not as a supporting affidavit for a warrant. Here, the opposite is true. Appellant is not attacking the sufficiency of the charging instrument; indeed, *Vallejo* teaches that the same particularity in stat-

ing facts sufficient to show commission of an offense is not required in a complaint *qua* charging instrument as it is in an indictment or information. Rather, appellant is challenging the factual sufficiency of the sworn document used to justify issuance and execution of his arrest warrant. The two uses for a complaint have distinct purposes, one to formally charge and give notice of the charge to an individual, and the other as an affidavit which functions to factually justify the legal seizure of a person or property.[16] Because we are here concerned with the sufficiency of a complaint *qua* affidavit, *Vallejo* provides no support for the holding below.

 The Supreme Court has held the exclusionary rule to be applicable to State prosecutions, with the same probable cause standards applicable to federal and state warrants under the Fourth and Fourteenth Amendments. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). It is now well established an affiant's mere conclusion a suspect has committed an offense is not sufficient to support a determination of probable cause. *Miller v. State,* 736 S.W.2d at 643; *Green v. State,* 615 S.W.2d at 706. The rule that complaints upon which arrest warrants are issued must contain sufficient information to show probable cause in order to render the search incident to the arrest legal, is not limited to felony arrest warrants but applies to misdemeanor arrest warrants as well. *Knox v. State,* 586 S.W.2d at 506. The basis for the federal rule applied through the Fourteenth Amendment and applicable to either searches or seizures under the Fourth Amendment is *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), wherein the Supreme Court wrote:

> The decisions of this Court concerning Fourth Amendment probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a war-

---

**16.** It has been held that a warrant of arrest is a process and not a pleading. *Jones v. State,* 568 S.W.2d 847 (Tex.Cr.App.1978), quoting from *Ellis v. Glascow,* 168 S.W.2d 946 (Tex.App.—San Antonio 1943). The complaint, information or indictment supporting execution of a warrant constitutes the initial pleading which (forcibly) joins the defendant to the criminal lawsuit.

rant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. *Spinnelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

*Whiteley v. Warden*, 401 U.S. at 564, 91 S.Ct. at 1035 (footnote deleted). *See also Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972) [no distinction drawn between felony and misdemeanor cases with regard to *Whiteley* rule where municipal court clerks authorized to issue warrants qualified as "neutral and detached magistrates" for purposes of Fourth Amendment].

*Lowery v. State*, 499 S.W.2d 160 (Tex.Cr. App.1973), like *Evans v. State*, supra, and *Knox v. State*, supra, applied the *Whiteley* rule to state cases. In the first two cases, this Court held the complaints upon which felony arrest warrants were issued and executed did not contain sufficient information to show probable cause. The *Knox* case concerned an arrest by capias for a theft offense, whereafter a quantity of heroin was discovered during the pat-down search incident to arrest. The *Knox* Court noted the complaint was conclusory, omitting the actual basis in terms of facts, allegations or source of the complainant's conclusions. The Court then noted the same caveat as stated above regarding the distinction to be drawn between a complaint used to support a warrant and a complaint used as a charging instrument:

> The holding today should not be confused with those cases which hold that the requisites of an affidavit or complaint or a complaint and information *to support a prosecution* are not as stringent as the requirements of a complaint or affidavit for a search warrant or an arrest warrant by which there might be a search incident to arrest. *See Wells v. State*, 516 S.W.2d 663 (Tex.Cr.App.1974); *Cisco v. State*, 411 S.W.2d 547 (Tex.Cr. App.1967); *Chapa v. State*, 420 S.W.2d 943 (Tex.Cr.App.1967). In *Chapa*, this court wrote: 'The purpose of the complaint is to apprise the accused of the facts surrounding the offense with which he is charged in order to permit him to prepare a defense to such charge.'

*Knox v. State*, 586 S.W.2d at 506 n. 1.

In the instant case, there is no doubt the complaint is wholly conclusory. There are factual conclusions, but as in *Knox*, no "actual basis" for those conclusions. Affiant "S. Hall" recites he or she "have good reason to believe, and do believe" appellant, on or about a certain date, unlawfully failed to appear in the municipal court of Deer Park. There is no allegation why such failure was unlawful or how affiant came to have such knowledge. While the "complaint" may have the statutory requirements for procedural validity, it lacks the necessary indicia of reliability demonstrated by facts showing probable cause for the magistrate to have made a proper evaluation of the allegations before issuing the warrant. It is in the form of a charge, not a supporting affidavit. There being no probable cause set forth in the complaint, the arrest of appellant was illegal. Appellant's first ground for review is sustained.

The search of appellant's apartment was made and his confession taken after he was illegally arrested. The confession should have been excluded unless there were intervening circumstances or events between the arrest and interrogation which relieved the "taint" of the procedure.[17] *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Black*,

---

17. The same would, of course, apply to the fruits of any search conducted at appellant's apartment which were later admitted into evidence at trial over his objection.

supra; *Bell v. State*, 724 S.W.2d 780 (Tex. Cr.App.1986); *Self v. State*, 709 S.W.2d 662 (Tex.Cr.App.1986). The Court of Appeals did not have the opportunity to review whether the "taint" of the illegal arrest was sufficiently dissipated. We will therefore remand the cause to the Court of Appeals to determine whether appellant's confession should have been excluded as a product of the illegal arrest.

The judgment of the Court of Appeals is reversed and the case is remanded to the Court of Appeals for further review consistent with this opinion.

CLINTON, J., concurs in the judgment of the Court.

TEAGUE, J., dissents.

CAMPBELL, MILLER and BAIRD, JJ., concur in the result reached in Part II of the opinion but cannot join Part I, believing it to be dicta and totally unnecessary to the disposition of the case.

STURNS, J., not participating.

BAIRD, Judge, concurring.

With all due respect to Judge Davis and his thorough and well written opinion, I can only concur in the remand of this cause to the Court of Appeals for further review under *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

I find Part I. of the foregoing opinion wholly unnecessary to reach this result. In my opinion, there is no reason for this Court, in this cause, to discuss the propriety of the "pretext arrest" doctrine. I find that portion of the opinion to be only dicta, adding nothing to the jurisprudence of this state. However, I find Part II. to be a correct statement of the law and all that is necessary for this Court to remand this cause.

Accordingly, I concur in the result.