# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00418-CR

**Mark Anthony Loewe, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 64692, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Mark Anthony Loewe guilty of evading arrest in a motor vehicle. *See* Tex. Penal Code Ann. § 38.04(a), (b)(1)(B) (West Supp. 2010). The trial court assessed punishment, enhanced by two previous felony convictions, at nineteen years' imprisonment. Appellant contends that the evidence is factually insufficient to sustain the jury's guilty verdict. We overrule this contention and affirm the judgment of conviction.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether, after viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court may impinge on the trier of fact's discretion only to the extent necessary to guarantee the fundamental protection of due process of law. *Id*. The *Jackson* standard is the only standard that

a reviewing court should apply in determining whether the evidence is sufficient to prove the defendant's guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

In *Brooks*, the court of criminal appeals overruled all opinions holding that there is a second, factual sufficiency standard for determining the sufficiency of the evidence. *Id*. Appellant urges that *Brooks* was ineffective to overrule established precedent because it was a plurality opinion. *See Crittenden v. State*, 899 S.W.2d 668, 671 (Tex. Crim. App. 1995) (stating that plurality opinion in *Gordon v. State*, 801 S.W.2d 899 (Tex. Crim. App. 1990), "could not operate to overrule established precedent").[1] But to say that there was no majority opinion in *Brooks* does not end the analysis. We must examine the lead and concurring opinions in *Brooks* to determine if there is a single rationale explaining the result that enjoys the assent of a majority. *See Haynes v. State*, 273 S.W.3d 183, 186-87 (Tex. Crim. App. 2008). The narrowest ground on which these five judges agreed is the holding of the court. *Id*. at 187.

The lead opinion in *Brooks*, in which four judges joined, stated that there is no meaningful distinction between the *Jackson* legal sufficiency standard and the factual sufficiency standard first articulated by the court of criminal appeals in *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996), that *Clewis* and all subsequent factual sufficiency opinions should be overruled, and that *Jackson* should be the only standard by which the sufficiency of the evidence is

---

[1] In *Gordon*, two judges joined the lead opinion announcing the result, four judges concurred in the result but expressly refused to join that portion of the lead opinion that purported to overrule the precedent at issue in *Crittenden*, another judge concurred in the result without opinion, another judge dissented without opinion, and the remaining judge did not participate. *See Gordon v. State*, 801 S.W.2d 668, 917 (Tex. Crim. App. 1990).

2

to be determined in a criminal case. *Brooks*, 323 S.W.3d at 912. One of the four judges in the lead opinion, joined by a fifth judge, wrote a concurring opinion stating that *Clewis*'s attempt to superimpose the civil factual sufficiency standard on top of the criminal legal sufficiency standard was doomed to failure because the two standards are fundamentally distinct and cannot be harmonized, that the *Jackson* standard is constitutionally mandated and must be followed in all criminal cases, and that the concept of factual sufficiency review in criminal cases should be "consign[ed] . . . to the dustbin of history." *Id*. at 926 (Cochran, J., concurring). Thus, a majority of five judges agreed that *Clewis* should be overruled and that the sufficiency of the evidence to support a criminal conviction should be determined solely by the *Jackson* legal sufficiency standard. This was, therefore, the holding of the court. *See Wirth v. State*, No. PD-1716-09, 2010 Tex. Crim. App. LEXIS 1675, at *2 (Tex. Crim. App. Dec. 15, 2010) (stating that *Brooks* overruled *Clewis*, vacating court of appeals opinion finding evidence factually insufficient, and remanding for reconsideration pursuant to *Brooks*).

Appellant asserts that the evidence is factually insufficient to sustain the jury's verdict. In the interest of justice, we will review the evidence to determine whether it is legally sufficient under *Jackson*.

Appellant and his sister, Michelle Perez, got into an argument at her apartment on the night of February 11, 2009. Also present were Perez's husband, Oscar Perez, and a friend, Ed Kendricks. Just before midnight, after appellant refused Perez's order to leave and shoved her against a wall, Perez locked herself in the bathroom and called 911. Meanwhile, Oscar Perez and

3

Kendricks were able to calm appellant and escort him out of the apartment. When Perez came out of the bathroom, appellant was gone.

Temple police officer Ken Johnson was dispatched to the scene and arrived within two or three minutes of Perez's call. As Johnson was walking through the apartment complex's parking lot on the way to Perez's apartment, he saw in the parking lot a white male wearing blue jeans, a white shirt, and a baseball cap. Johnson testified that he did not attempt to detain this man, but he did call out to ask his name. The man responded, "Johns" or "Johnson."

When Johnson arrived at Perez's apartment, she told him that she had been assaulted by appellant and that he had just left. She told Johnson that appellant was wearing blue jeans, a white shirt, and a baseball cap. She also told him that appellant was driving a blue Suburban with tinted windows. Johnson realized that the man he had seen in the parking lot matched this description, and he immediately radioed this information to Officer Louis Tolliver, who was also responding to Perez's call.

Tolliver testified that as he arrived at the apartment complex, he saw a blue Suburban with temporary plates backing out of a parking space.[2] Tolliver saw no one else in the parking lot, saw no other vehicles moving, and saw no other blue Suburban. Tolliver, who was in full police uniform, approached the Suburban and spoke to the driver through the open driver's side window. Tolliver testified that the driver identified himself as "Johnson." Tolliver told the man that he was

---

[2] Perez testified that appellant had recently purchased the Suburban.

4

investigating the report of a disturbance and asked him to park his vehicle until the officer could "find out what's going on." Instead, the driver put the Suburban in gear and drove away at high speed.

A third officer, Andrew Meelsbusch, testified that he was also responding to the disturbance report when he heard Tolliver report that a blue Suburban was fleeing. When Meelsbusch was two blocks away from the apartment complex, he saw a blue Suburban run a stop sign and then stop in the middle of the intersection. Meelsbusch activated his emergency lights. The Suburban "then proceeded in front of me at a high rate of speed, came really close to the front of my patrol unit and then continued westbound." Meelsbusch said that the Suburban had temporary plates, and the driver was wearing a white shirt. A brief chase ensued during which the Suburban reached a speed exceeding one hundred miles per hour. The chase was called off by a supervisor for safety reasons and because the police had appellant's name and address.

The jury found that appellant intentionally fled from Tolliver, who appellant knew was a police officer attempting to lawfully detain him. *See* Tex. Penal Code Ann. § 38.04(a). Appellant contends that the evidence is insufficient to prove that appellant was the driver of the blue Suburban, that the attempted detention of the driver was lawful, or that the driver knew that Tolliver was attempting to detain him.

Neither Johnson, Tolliver, nor Meelsbusch identified appellant at trial as the man they saw at the apartment complex or driving the Suburban. In addition, the man Johnson and Tolliver spoke to at the apartment complex identified himself as "Johnson." On the other hand, the evidence also shows that appellant left Perez's apartment at about midnight wearing blue jeans and a white

5

shirt, and that appellant was driving a blue Suburban. Both the suspect and the vehicle seen by the officers at or near the apartment complex at or about midnight matched this description. No other person was seen in the parking lot, nor was any other blue Suburban observed by the officers. Viewing all the evidence in the light most favorable to the verdict, the jury could rationally find that appellant had deliberately misidentified himself to the officers, and that he was the man in the parking lot who drove away in the blue Suburban.

Appellant argues that the attempted detention was unlawful because Tolliver did not reasonably suspect that the driver of the blue Suburban had been involved in criminal activity. Tolliver knew that a domestic disturbance had been reported at Perez's apartment minutes before he arrived. He also knew that Perez had told Johnson that she had been assaulted by appellant, and he knew the description of appellant and his vehicle that Perez had provided. Tolliver testified that the blue Suburban and its driver matched the suspect's description, and that no other person or vehicle in the parking lot did so. Appellant argues that Perez was not credible and the officers should have given no weight to the information she provided. He notes that Johnson testified that Perez did not appear to be injured and that no evidence of a struggle can be heard on the recorded 911 call. We are not persuaded, however, that the officers should have simply ignored Perez's outcry and made no effort to detain appellant until they could clarify the situation. We conclude that the specific, articulable facts known to Tolliver, combined with the reasonable inferences they support, warranted his suspicion that the driver of the Suburban was the suspect in the reported domestic disturbance. *See Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (summarizing basis for investigative detention). The attempted detention was lawful.

6

Finally, appellant argues that the State failed to prove that he knew that Tolliver was attempting to detain him.[3] Tolliver testified that he was in full police uniform. Tolliver spoke to appellant through the open window of the Suburban, told him that there had been a report of a domestic disturbance, and instructed him to stop and park his vehicle while the officer gathered more information. The jury could rationally find from this testimony that appellant knew Tolliver was a police officer attempting to detain him.

The evidence is sufficient to support the finding of guilt beyond a reasonable doubt. Appellant's issues are overruled, and the judgment of conviction is affirmed.

_____

Melissa Goodwin, Justice

Before Justices Henson, Rose and Goodwin

Affirmed

Filed:   February 2, 2011

Do Not Publish

---

[3] It was not necessary for the State to prove that appellant knew that the detention was lawful. *See Hazkell v. State*, 616 S.W.2d 204, 205 (Tex. Crim. App. 1981).