NO. 07-07-0066-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 25, 2007



______________________________




MARLYN SOLANAS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 277TH DISTRICT COURT OF WILLIAMSON COUNTY;



NO. 03-721-K277; HONORABLE KEN ANDERSON, JUDGE



_______________________________



Before CAMPBELL and HANCOCK and PIRTLE, JJ.

ORDER


 On March 24, 2004, pursuant to a plea bargain, Appellant, Marlyn Solanas, was
convicted of intoxication assault, a third-degree felony. Punishment was assessed at
confinement for ten years and a $2,500 fine, suspended in favor of ten years community
supervision. On September 9, 2005, the State filed a motion to revoke, alleging that
Appellant had violated specified terms and conditions of community supervision. Following
a plea of true to the State's allegations, Appellant's community supervision was revoked
and she was sentenced to ten years confinement, without imposition of a fine. Notice of
appeal was timely given.

 Appointed appellate counsel, David A. Schulman, has filed an Anders brief
contending that, based upon his professional evaluation of the record, the instant appeal
is frivolous and without merit. (1) Pursuant to the general policy of this Court following the
filing of an Anders brief, the Clerk requested that counsel file an original and two copies
of a motion to withdraw. See generally McCoy v. Court of Appeals of Wisconsin, Dist. 1,
486 U.S. 429, 437 108 S.Ct. 1895, 1901, 100 L.Ed.2d 440 (1988) (providing "[w]hen
retained counsel concludes that an appeal would be frivolous, he or she has a duty to
advise the client that it would be a waste of money to prosecute the appeal and that it
would be unethical for the lawyer to go forward with it. When appointed counsel comes
to the same conclusion, the same duty to withdraw arises"). Texas Courts have similarly
required appellate counsel to file a motion to withdraw. See Johnson v. State, 885 S.W.2d
641, 645 (Tex.App.-Waco 1994, pet. ref'd) (providing "[a]fter concluding that the appeal
is frivolous, the attorney is under a duty to request permission from [the appellate] court
to withdraw from the appeal").

 In response to a request from this Court's Clerk, counsel has filed his Response to
Clerk's Instructions Regarding Motion to Withdraw wherein he expresses that he
"respectfully declines the opportunity to withdraw from representation." In a very principled
response, counsel expresses his belief that he is prevented from withdrawing due to his
on-going duties to his client, the Appellant, including the duty to inform her of her right to
file a pro se petition for discretionary review in the event that this Court should affirm her
conviction. (2)

 Counsel correctly notes in his response that he has duties to his client "even after
proceedings in [the appellate court] are complete." Specifically, after filing an Anders brief
counsel has the duty to "support his client's appeal to the best of his ability." Anders, 386
U.S. at 744. However, upon determining that the appeal is frivolous, he should advise the
court and request permission to withdraw. Id. The purpose of an Anders brief is to support
a motion to withdraw. Id. 

 Counsel has, at least, four distinct "educational" duties to a client when filing an
Anders brief. First, counsel must provide the appellant with a copy of the Anders brief filed. 
Id. Second, counsel must inform the appellant of his right to file a response in his own
behalf. McMahon v. State, 529 S.W.2d 771, 772 (Tex.Crim.App. 1975). Third, counsel
must advise the appellant of his right to review the record to determine what points to raise
in a pro se response. Id. And finally, counsel must inform the appellant of his right to seek
review, by way of a pro se petition for discretionary review to the Texas Court of Criminal
Appeals in the event the Court of Appeals were to affirm the conviction. Ex Parte Owens,
206 S.W.3d 670, 674 (Tex.Crim.App. 2006).

 Counsel's duty to represent a defendant extends only until charges are dismissed,
the defendant is acquitted, appeals are exhausted, or counsel "is relieved of his duties by
the court or replaced by other counsel after a finding of good cause is entered of record." 
Tex. Code Crim. Proc. Ann. art. 26.04(j)(2) (Vernon Supp. 2006). Thereafter, counsel's
duty to represent his client ceases. Counsel's insistence on his duty to represent Appellant
after the filing of an Anders brief is misplaced and is, in fact, an impediment to this Court's
role in reviewing an Anders appeal. Furthermore, allowing counsel to withdraw from
representation does not prevent or impede counsel from meeting any other duty to his
client--moral, ethical, or otherwise. (3) 

 Therefore, the Court requests that counsel for Appellant reconsider his position. 
Counsel is hereby afforded an opportunity to comply with this Court's request regarding the
filing of a motion to withdraw in light of the filing of a brief in accordance with Anders v.
California. If a motion to withdraw is not filed with the Clerk of this Court on or before June
8, 2007, this appeal will be abated and the cause remanded to the trial court for further
proceedings consistent with this order.

 Per Curiam

Do not publish.
1. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
2. Ex Parte Owens, 206 S.W.3d 670, 674 (Tex.Crim.App. 2006), establishes an
"educational burden" upon appellate counsel, following the filing of an Anders brief, to
inform the client of the right to seek review by way of a petition for discretionary review to
the Texas Court of Criminal Appeals in the event the Court of Appeals were to affirm the
conviction.
3. Ex parte Owens, 206 S.W.3d 670, 674 n.28 (Tex.Crim.App. 2006)("There is no
particular reason that counsel filing an Anders brief cannot alert his client to the client's
right to file a petition for discretionary review at the same time that he informs his client of 
his rights to file a pro se appellate brief, and to review the appellate record in preparation
of such a pro se brief.")



ights under the Fourth Amendment to the United States
Constitution, the drugs found in his possession by Sullivan were fruits of the illegal
detention and the trial court abused its discretion in overruling his motion to suppress
evidence of the drugs. His second issue urges that the detention violated his rights under
Article 1, § 9 of the Texas Constitution, and evidence of the drugs was inadmissible
pursuant to Tex. Crim. Proc. Code Ann. § 38.23 (Vernon Supp. 2002). (1) 


II. LAW

A. Standard of Review

 Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of
discretion standard. See Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). We
must uphold the trial court's decision on any proper grounds, whether or not relied upon
by the trial court, when the standard of review is abuse of discretion. See State v. Ross,
32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). 

 In reviewing trial court rulings on matters such as motions to suppress, appellate
courts afford almost total deference to trial court determinations of historical facts and to
decisions involving mixed questions of law and fact if the resolution of those questions
depends on an evaluation of credibility and demeanor. See Guzman v. State, 955 S.W.2d
85, 89 (Tex.Crim.App. 1997). Mixed questions of law and fact not dependent on evaluation
of credibility and demeanor are reviewed de novo. Id. If no explicit findings of fact are
made by the trial court, appellate courts assume that the trial court made implicit findings
of fact which are supported by the record and which support the conclusion of the court. 
See Ross, 32 S.W.3d at 855. 

 Detention and reasonable suspicion are by nature legal concepts and are properly
subject to de novo review. See Hunter v. State, 955 S.W.2d 102, 107 (Tex.Crim.App.
1997); Sanders v. State, 992 S.W.2d 742, 744 (Tex.App.--Amarillo 1999, pet. ref'd). 
Accordingly, for purposes of Fourth Amendment analysis we give appropriate deference
to the trial court's determination of historical facts, but we review the decision of the trial
court de novo as to whether the historical facts, viewed from the standpoint of an
objectively reasonable person so situated as was the police officer, amount to "reasonable
suspicion" sufficient to justify an investigatory detention. Ornelas v. United States, 517
U.S. 690, 697-99, 116 S.Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996); Guzman, 955 S.W.2d
at 89. B. Investigatory Detention

 Texas courts follow the guidance of the United States Supreme Court when
interpreting the federal constitution and the rights thereunder. State v. Guzman, 959
S.W.2d 631, 633 (Tex.Crim.App. 1998). The Fourth Amendment to the U. S. Constitution
protects persons from unreasonable searches and seizures. Elkins v. United States, 364
U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960); Davis v. State, 947 S.W.2d
240, 242 (Tex.Crim.App. 1997). The Fourth Amendment standard for judging the
reasonableness of a search or seizure is an objective standard based upon the record
presented. See Ornelas, 517 U.S. 690, 116 S.Ct. at 1661-62. 

 If police know specific and articulable facts which create a reasonable suspicion
that a person they encounter might have been, is or may in the future become involved in
a crime, then a Terry (2) stop may be made to investigate that suspicion. See United States
v. Hensley, 469 U.S. 221, 228-229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). A
"reasonable suspicion" exists if a reasonable person in the position of the officer making
the stop, with the training and experience of the officer, and with the knowledge possessed
by the officer, could suspect that the vehicle or person stopped has been or is connected
to criminal activity. See United States v. Cortez, 449 U.S. 411, 421-22, 101 S.Ct. 690, 697,
66 L.Ed.2d 621 (1981); Sanders, 992 S.W.2d at 748-49. The subjective thoughts and
intentions of the officer making the stop are not determinative of whether articulable facts
support a reasonable suspicion. Whren v. United States, 517 U.S. 806, 813, 116 S.Ct.
1769, 1774, 135 L.Ed.2d 89 (1996). The Fourth Amendment's concern with
"reasonableness" allows certain actions to be taken in certain circumstances, whatever 
the subjective intent of the officers involved. Whren, 517 U.S. at 814, 116 S.Ct. at 1775. 
Circumstances to be considered in determining the reasonableness of a detention are
those known by the officer making the stop as well as those collectively known by officers
or agents cooperating in effecting the stop. See State v. Jennings, 958 S.W.2d 930, 933
(Tex.App.--Amarillo 1997, no pet.). Determination of reasonable suspicion must be based
on common sense judgments and inferences about human behavior. See Illinois v.
Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). 

 Article I, § 9 of the Texas Constitution does not encompass a more stringent
standard than the Terry standard which is used to evaluate a temporary investigative stop
by a police officer. Rhodes v. State, 945 S.W.2d 115, 117 (Tex.Crim.App. 1997). The
standard used to measure conduct of police under Article I, § 9 of the Texas Constitution
is, like the standard used to measure conduct under the Fourth Amendment, an objective
standard. Crittenden v. State, 899 S.W.2d 668, 673-74 (Tex.Crim.App. 1995); Gordon v.
State, 801 S.W.2d 899, 912 (Tex.Crim.App. 1990). That is, the reasonableness of the
officers' conduct is not determined by the subjective thoughts and intent of the officers
involved. Id. 

III. ANALYSIS

A. United States Constitution

 In determining whether appellant's detention was in violation of the Fourth
Amendment standard of reasonableness, we look objectively at the facts known by
Menchaca and Sullivan prior to appellant's detention by Sullivan. Although the record
contains testimony by both Menchaca and Sullivan of their subjective beliefs and
conclusions as to reasonable suspicion and probable cause, the legality of the
investigatory stop is not dependent on the subjective mindset or reasoning of the officers
in deciding to stop appellant. Whren, 517 U.S. at 812-13, 116 S.Ct. at 1772-74. Thus,
neither the trial court nor we are bound by opinions expressed by Menchaca and Sullivan
as to existence of reasonable suspicion for stopping, or probable cause for arresting,
appellant and his companion. 

 The factors before Menchaca and Sullivan at the time Sullivan detained appellant
were: (1) apartment 104 had been under surveillance for possible drug-related activity for
some weeks before the date of appellant's arrest; (2) police had requested the manager
of the apartments to call if any "suspicious activity" was noted as to apartment 104; (3) the
manager called police about suspicious activity in connection with apartment 104 on
occasions before August 19th; (4) the manager called Menchaca at Menchaca's home on
Saturday afternoon because appellant and Morin asked for a key to apartment 104, neither
appellant nor Morin were on the lease agreement, and the manager concluded that actions
of the men were "suspicious" enough to both call Menchaca and have the apartment
maintenance man follow appellant and Morin as they left the manager's office; (5) when
Menchaca arrived at the apartments, he found the sliding glass door to apartment 104 off
its track and the base of the door pulled away from the track; (6) appellant and Morin
walked to apartment 104 and stayed just outside the door while Menchaca maintained
them under surveillance; (7) one of the men seemed to be paying close attention to
Menchaca as he sat in his car observing apartment 104 and the two men; (8) one of the
men constantly looked around as the two men waited outside apartment 104; (9) one of
the men took his shirt off, placed it on top of the fence surrounding the enclosed area
around apartment 104, leaned over the fence and peered into the apartment through the
patio sliding door which was off its track; (10) the sliding door had not been off its track
when Menchaca was at the apartments previously; (11) Menchaca then observed a female
approach apartment 104, hug one of the men and open the apartment door with a key; (12)
the woman and two men entered the apartment and after a short time emerged from the
apartment; (13) officer Sullivan then arrived on the scene in his uniform, was briefed by
Menchaca and directed to detain appellant and Morin, immediately shouted for them to
stop, and ran toward the two men, shouting for them to stop as the two men first looked
at Sullivan, then turned and hurried away from him in such manner that Sullivan believed
they were trying to evade him; (3) (15) Sullivan continued running toward them and shouting
for them to stop, whereupon the men quickly went to and entered a car and sped away. 
It was after such departure that appellant was stopped. 

 The controlling determination is whether, based upon the specific articulable factors
known to the officers cooperating in the detention, see Jennings, 958 S.W.2d at 933, and
evaluating the totality of the circumstances as an experienced law enforcement officer
would have evaluated them as of the time appellant was stopped by Sullivan, a reasonably
prudent man could have suspected that appellant may have been or was then engaged
in criminal activity. See Sanders, 992 S.W.2d at 749. If so, Sullivan's action in stopping
appellant to investigate further was not improper. 

 Appellant argues that Menchaca observed appellant and Morin for a total of 40-45
minutes without seeing either man commit an illegal act, an act preparatory to an illegal act
or any act consistent with either man having previously tried to enter apartment 104. To
the contrary, appellant urges, Menchaca had seen a woman later identified as a resident
of the apartment open the door with a key and let appellant and Morin into the apartment. 

 The applicable test for legality of appellant's detention, however, is not whether the
officers actually saw appellant or Morin perform illegal acts or acts consistent with having
entered the apartment illegally. The test is whether the enumerated articulable
circumstances, including the evasive actions taken by appellant and Morin when directed
to stop by a uniformed police officer, could cause a reasonable man with the training and
knowledge of officers cooperating in the detention to suspect that appellant might have
been or was involved in criminal activity. Even if we assume, arguendo, that the facts and
factors known to Menchaca at the time he directed Sullivan to detain appellant and Morin
were insufficient to detain appellant without violating his Fourth Amendment rights, those
factors must be considered together with the factor of appellant's flight from Sullivan. As
the United States Supreme Court recently noted, an individual has a right to ignore a police
officer who approaches that individual without reasonable suspicion or probable cause. 
See Wardlow, 528 U.S. at 125, 120 S.Ct. at 676. The approached individual may go about
his or her business and refuse to cooperate. A refusal to cooperate, without more, does
not furnish the minimal level of objective justification needed for detention or seizure, but,
evasive behavior is a factor relevant to determining reasonable suspicion. Id. Flight from
an officer is the opposite of merely refusing to cooperate, remaining silent when
questioned, or going about one's business. Id. 

 Determination of reasonable suspicion must be based on common sense judgments
and inferences about human behavior. Id. The evasive actions of appellant and Morin,
when Sullivan did nothing to provoke evasion or flight except to call out to them to stop,
together with the other articulable factors, created "reasonable suspicion" to allow a brief
detention for further investigation. (4) See id. Appellant's first issue is overruled. 

B. Texas Constitution

 Appellant acknowledges in his brief that the Texas Constitution and CCP art. 38.23
do not provide more protection to him in this matter than does the U. S. Constitution. See
Gordon, 801 S.W.2d at 912. We have determined in considering issue one that appellant's
rights under the federal constitution were not violated. Thus, we need not and will not
separately address his state constitution claim. See Tex. R. App. P. 47.1; Brown v. State,
943 S.W.2d 35, 36 n.3 (Tex.Crim.App. 1997). Appellant's second issue is overruled. 

IV. CONCLUSION

 Having overruled appellant's two issues, we affirm the judgment of the trial court.


 Phil Johnson

 Justice





Publish. 

1. Further references to the Code of Criminal Procedure will be by reference to "CCP 
_."
2. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
3. Appellant did not contest Sullivan's testimony that he believed appellant and Morin
were attempting to evade him, nor does he assert on appeal that a fact question was
presented to the trial court on the question. Appellant states in his brief that he presented
no evidence at the suppression hearing to contest the State's witnesses' testimony, no fact
question was before the trial court, and that our review is de novo. See Hunter, 955
S.W.2d at 107; Guzman, 955 S.W.2d at 89. In any event, to the extent a fact question
might have been created, no explicit findings were made by the trial court, and we assume
that the trial court made implicit findings of fact which are supported by the record and
which support the conclusion of the court. See Ross, 32 S.W.3d at 855. Such implied
finding would include a finding that appellant and Morin were attempting to evade or flee
from Sullivan after he called to them to stop. 
4. Neither the legality of Sullivan's search of appellant, nor the propriety of appellant's
arrest is before us. See Wardlow, 528 U.S. at 124 n.2, 126, 120 S.Ct. at 676 n.2, 677.