**Opinion issued November 19, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00738-CR & 01-14-00739-CR

———————————

**WILLIAM COLUMBUS HORHN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1383989 & 1383990**

---

## O P I N I O N

A jury convicted appellant William Horhn of the felony offenses of debit

card abuse and fraudulent use of identifying information.[1] The trial court assessed

---

[1]     The charge for debit card abuse, pursuant to Texas Penal Code section 32.31
       (Vernon 2011), was presented in trial court cause number 1383989 and resulted in
       appellate cause number 01-14-00738-CR. The charge for fraudulent use of

his punishment at six months' confinement for the debit card offense and twenty years' confinement for the fraudulent use of identifying information offense, to run concurrently. In two issues, appellant argues that the trial court erred (1) in denying his motion to suppress evidence obtained in the search incident to his arrest because the affidavit supporting the arrest warrant was insufficient and (2) in denying his motion to quash the indictment in cause number 1383990 for fraudulent use of identifying information based on his argument that Penal Code section 32.51 is facially unconstitutional.

We affirm.

## Background

Police officers arrested appellant after observing him at a gas station in Harris County and recognizing him as someone who was a suspect in a burglary. Upon approaching and detaining appellant, officers discovered that the burglary warrant was no longer valid, but they received information that appellant had valid warrants for his arrest based on his failure to appear in municipal court in the city of Oak Ridge North in Montgomery County. The officers arrested appellant, and, incident to the arrest, recovered appellant's cell phone and a credit card in the name of complainant Marisol Pimentel. Police obtained a warrant to search the cell

---

identifying information, pursuant to Penal Code section 32.51 (Vernon Supp. 2015), was presented in trial court cause number 1383990 and resulted in appellate cause number 01-14-00739-CR.

phone and discovered additional items of identifying information, including names, social security numbers, and dates of birth for multiple individuals. Appellant was charged with fraudulent use of identifying information of multiple named complainants with the intent to defraud and harm. He was also charged with unlawful possession with the intent to use the debit card of another without effective consent.

Appellant filed a motion to quash his indictment for fraudulent use of identifying information, arguing that Penal Code section 32.51 "is invalid on its face because it's overbroad and it is a restriction on the First Amendment right to free speech." The State responded that the offense addressed possession of information, not acts of "expression," and that the law was narrowly tailored "to advance the keen interest that the government has in protecting its citizens from identity theft." The trial court denied the motion to quash.

Appellant also moved to suppress the evidence obtained as a result of the search incident to his arrest on several grounds. Relevant to this appeal, he argued that the municipal arrest warrant was invalid because the supporting affidavit did not provide probable cause to issue the warrant. He also argued that because his arrest was based on an invalid warrant, his arrest was illegal and the evidence obtained incident to his arrest was likewise inadmissible. At the suppression

3

hearing, the trial court admitted a copy of appellant's arrest warrant for failure to appear in the Oak Ridge North municipal court and other documents.

Sergeant J. Wood testified regarding the circumstances of appellant's arrest. He first observed appellant and two other associates at a gas station and recognized appellant as a suspect police "had been looking for . . . for quite some time in regards to a burglary warrant that had issued for his arrest in Fort Bend County." Sergeant Wood and other uniformed officers who responded to the scene detained appellant "pending verification of the burglary warrant." The officers determined that the burglary warrant was no longer valid because appellant had posted bond, but appellant had "four arrest warrants from Oak Ridge North for traffic violations." Officers arrested appellant based on these warrants, identified appellant's cell phone, and "found a credit card in his wallet that did not bear [his] name as well as other evidence along those same lines containing identifying information in the cell phone."

Officer C. Flora also testified at the suppression hearing. He stated that he and his partner verified through dispatch that appellant's traffic-violation warrants from Oak Ridge North were still valid and arrived at the scene after appellant had been detained. Prior to informing appellant of his *Miranda* rights, the officers recovered appellant's wallet, which contained a credit card in someone else's name, and a cell phone. Officer Flora asked appellant about the phone, and

4

appellant acknowledged that the phone was his but stated that it did not work. Officer Flora then asked appellant whether there was anything illegal on the phone that the police needed to know about and asked if the officers could look at it. Officer Flora testified that appellant gave his consent to the examination of the cell phone and noted appellant's consent in the offense report.

Officer Flora testified that he "initially went to the images on [appellant's] phone and . . . noticed a few spreadsheets that someone had taken a picture of that contains several names, dates of birth, social security numbers and addresses and some e-mail accounts." At that point, Officer Flora contacted the District Attorney's Office and was advised to get a search warrant for the phone. Officer Flora provided the affidavit and obtained the search warrant. Pursuant to the search warrant, Flora gave the phone to the police department's digital forensics lab to recover the information, which yielded much of the evidence presented by the State regarding appellant's possession and use of identifying information with the intent to defraud or harm.

Officer T. O'Neill testified that he and his partner responded to Sergeant Wood's call and detained appellant while the existence of the outstanding warrants was verified. Officer O'Neill stated that once he confirmed the validity of the warrants he arrested appellant and conducted a search incident to the arrest. He discovered the wallet in appellant's pocket and "[l]ooked for identifying

information in the wallet." He discovered the Visa card in Pimentel's name and determined that she "was a complainant in a theft where a purse was stolen." He returned the wallet and the rest of its contents to a friend of appellant and retained Pimentel's card as evidence.

Appellant testified that he was helping a friend put oil in his car when he was detained by the police officers. He stated that he was immediately handcuffed and officers told him that he was being arrested "[b]ecause [he] had warrants out of Fort Bend." Appellant further testified that the officers removed his shoes and emptied everything out of his pockets before placing him in the back of the police car. He acknowledged that the police recovered a cell phone from the car, but he stated that he never had a conversation with any of the officers about the phone, never stated that it was his, and never agreed that officers could look inside the phone. On cross-examination, appellant testified that the cell phone did not belong to him but he used it. He stated that he had the cell phone in his possession the afternoon he was arrested.

Appellant argued that the affidavit accompanying the municipal arrest warrant relied upon by the State was "wholly conclusory." The State responded that appellant was arrested pursuant to a warrant and that the trial court was required to give deference to the magistrate's decision to sign the arrest warrant. The trial court denied appellant's motion to suppress, and it stated on the record

that it found the testimony of the officers credible and it found that the evidence was lawfully obtained.

The jury convicted appellant of the felony offenses of debit card abuse and fraudulent use of identifying information, and the trial court assessed his punishment. This appeal followed.

## Motion to Suppress

In his first issue, appellant argues that the trial court erred in denying his motion to suppress evidence collected incident to his arrest because the arrest was based on an invalid arrest warrant for failure to appear in municipal court in Oak Ridge North and that he was harmed by the denial of the motion to suppress because "without the authority to arrest [him] . . . law enforcement would not have been able to conduct a search incident to arrest and discover evidence ultimately used to convict [him]."

## A. Standard of Review

We review the trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Turrubiate*, 399 S.W.3d at 150; *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (reviewing

court considers de novo issues that are purely questions of law, such as whether reasonable suspicion or probable cause existed at time of search or seizure). In determining whether the evidence supports the trial court's explicit fact findings, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports the facts. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Valtierra*, 310 S.W.3d at 447; *Garcia-Cantu*, 253 S.W.3d at 241. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48.

Appellant argues that the trial court erred in denying his motion to suppress evidence discovered during a search incident to arrest because the underlying arrest warrant was not supported by a sufficient affidavit.

The affidavit supporting an arrest warrant is called a complaint. *See* TEX. CODE CRIM. PROC. ANN. arts. 15.04, 15.05 (Vernon 2015); *Weems v. State*, 167 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The Code of Criminal Procedure provides that "[t]he complaint shall be sufficient, without regard to form," if it states the name of the accused, shows "that the accused has

committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense," states the time and place of the commission of the offense "as definitely as can be done by the affiant," and is signed by the affiant. TEX. CODE CRIM. PROC. ANN. art. 15.05; *Weems*, 167 S.W.3d at 355–56.

Furthermore, the United States and Texas constitutions provide that an arrest warrant must be based on probable cause. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Gordon v. State*, 801 S.W.2d 899, 913–15 (Tex. Crim. App. 1990); *Brooks v. State*, 76 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Probable cause may be established by a supporting affidavit, which, when viewed in the totality of the circumstances, contains sufficient information to justify a neutral and detached magistrate's decision to issue the warrant. *Brooks*, 76 S.W.3d at 431 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 449 91 S. Ct. 2022, 2029 (1971)).

We apply a highly deferential standard when reviewing a magistrate's decision to issue a warrant. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). We are not to analyze the affidavit in a hyper-technical manner. *Rodriguez v. State*, 232 S.W.3d 55, 59 (Tex. Crim. App. 2007). Rather, a reviewing court should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. *Id.* at 61. If the

magistrate had a substantial basis for concluding that probable cause existed, we will uphold the probable cause determination. *McLain*, 337 S.W.3d at 271.

## B.    Analysis

Appellant argues that the affidavit supporting the arrest warrant for his failure to appear in municipal court in Oak Ridge North was conclusory and stated no facts that would support a finding of probable cause. The "affidavit of probable cause for warrant of arrest" provided:

> I, the Affiant, being duly sworn on oath, stated that I have good reason to believe and do believe that on or about the 11th Day of October, 2011 in Oak Ridge North, Montgomery County, Texas, William Columbus Horhn, Jr., Defendant, committed the offense of: Failure to Appear/Bail Jumping, a misdemeanor.
> My belief of the above is based upon facts and information provided to me by Michelle Buchannan, a peace officer or officer of the court charging on complaint that the Defendant committed such offense.

The affidavit was signed and sworn by Michelle Buchannan. The judge of the municipal court in Oak Ridge North, where appellant had been ordered to appear, signed an order at the bottom of the affidavit stating that he had "examined the foregoing affidavit and [had] determined that probable cause does exist for the issuance of an arrest warrant for the named above Defendant." The municipal judge subsequently issued the arrest warrant.

This affidavit is sufficient as a complaint under the requirements set out in Code of Criminal Procedure article 15.05. It states appellant's name, states that he

committed the offense of "failure to appear/bail jumping" on October 11, 2011, in Oak Ridge North, Montgomery County, and is signed by Michelle Buchannan as the affiant. *See* TEX. CODE CRIM. PROC. ANN. art. 15.05; *Weems*, 167 S.W.3d at 355–56. The affidavit likewise indicates that the affiant's belief that appellant committed the offense was based on her personal knowledge as "a peace officer or officer of the court charging on complaint that the Defendant committed such offense."

Appellant relies on *Gordon v. State*, 801 S.W.2d 899, but his reliance is misplaced. In *Gordon*, the Court of Criminal Appeals overruled the court of appeals' holding that it was unnecessary for the affidavit supporting Gordon's arrest warrant to state sufficient facts as to constitute probable cause and concluded that the complaint on which the warrant for failure to appear was based was insufficient to support probable cause because it was "wholly conclusory." *Gordon*, 801 S.W.2d at 912, 916; *Brooks*, 76 S.W.3d at 432. The court noted that the complaint contained factual conclusions but no "actual basis" for those conclusions. *Gordon*, 801 S.W.2d at 916. In the *Gordon* affidavit, "Affiant 'S. Hall' recite[d] that he or she '[had] good reason to believe, and [did] believe' appellant, on or about a certain date, unlawfully failed to appear in the municipal court of Deer Park." *Id.* The *Gordon* court observed that "[t]here is no allegation why such failure was unlawful or how affiant came to have such knowledge." *Id.*

11

The court concluded that although the complaint met the statutory requirements for procedural validity, it did not set forth adequate probable cause. *Id.*

However, the affidavit here is distinguishable in several aspects from that in *Gordon*. The affidavit for appellant's failure to appear in Oak Ridge North specifically identifies the affiant as Michelle Buchannan, "a peace officer or officer of the court charging on complaint that the Defendant committed such offense." Buchannan averred that appellant "committed the offense of: Failure to Appear/Bail Jumping, a misdemeanor."[2] And unlike the complaint in *Gordon*, the affidavit here indicates that Buchannan's statements that appellant committed the specified offense were based on her personal knowledge obtained as a peace officer or officer of the court where appellant failed to appear. Thus, unlike the affidavit in *Gordon*, this affidavit provides more information regarding the unlawfulness of appellant's failure to appear and the source of the affiant's knowledge. *See id.*

The Fourteenth Court of Appeals considered a similar situation in *Brooks v. State* and determined that probable cause supported the issuance of an arrest warrant. In *Brooks*, the complaint stated that the affiant, who was identified by

---

[2]     *See* TEX. PENAL CODE ANN. § 38.10(a) (Vernon 2011) (providing that "[a] person lawfully released from custody, with or without bail, on condition that he subsequently appear commits [the offense of Bail Jumping and Failure to Appear] if he intentionally or knowingly fails to appear in accordance with the terms of his release" and providing that such failure constitutes misdemeanor unless "the offense for which the actor's appearance was required is classified as a felony").

12

name, believed that Brooks "intentionally and knowingly violate[d] his written promise to appear in Municipal Court in the City of Texas City, Texas, by failure to appear in said court on or before [said date]." 76 S.W.3d at 431. The affiant did not state that she had personal knowledge of the offense or that she was present and witnessed Brooks' failure to appear on the promised dates. *Id.* However, in addition to the complaint, the court's clerk also provided an affidavit of personal knowledge of appellant's failure to appear. *Id.* at 433.

The *Brooks* court distinguished its case from that in *Gordon*, observing that the affidavits that courts have deemed insufficient to support an arrest warrant "were conclusory affidavits issued by police officers without personal knowledge or underlying facts describing the officer's conclusion." *Id.* (emphasis omitted) (distinguishing *Gordon*, 801 S.W.2d 899, *Miller v. State*, 736 S.W.2d 643 (Tex. Crim. App. 1987), and *Green v. State*, 615 S.W.2d 700 (Tex. Crim. App. 1980)). The Fourteenth Court held that the municipal warrants were valid, observing that "[t]he failure to appear in court is a unique offense for purposes of issuing a warrant" because, "[b]y its very nature, a defendant's failure to appear is typically within the court's personal knowledge" and because "[w]hether the defendant appears or fails to appear is an easily ascertainable, objective event—either the party is in court or he is not in court." *Id.* at 433–34 (citing *Atkins v. State*, 984 S.W.2d 780, 783 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).

Here, as in *Brooks*, the affidavit was made based on the affiant's personal knowledge of appellant's failure to appear. *See id.* Buchannan, "a peace officer or officer of the court charging on complaint that the Defendant committed such offense," swore based on personal knowledge that appellant "committed the offense of: Failure to Appear/Bail Jumping, a misdemeanor" on a particular date in a particular municipality. Furthermore, in addition to signing the arrest warrant, the judge of the municipal court where appellant failed to appear signed an order, embedded on the page containing the probable cause affidavit, stating that he had "determined that probable cause does exist for the issuance of an arrest warrant for the named above Defendant."

Viewing this affidavit in a commonsensical and realistic manner, recognizing the reasonable inferences that the magistrate could draw from the statements in the affidavit, and applying a highly deferential standard in reviewing the magistrate's decision to issue a warrant here, we conclude that the magistrate had a substantial basis for concluding that appellant failed to appear. *See McLain*, 337 S.W.3d at 271; *Rodriguez*, 232 S.W.3d at 59, 61.

We conclude that the affidavit here, when viewed in the totality of the circumstances, established probable cause in that it contained sufficient information to justify a neutral and detached magistrate's decision to issue the warrant. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564–66,

14

91 S. Ct. 1031, 1034–35 (1971); *Brooks*, 76 S.W.3d at 431. The warrant for appellant's arrest for failure to appear in municipal court was valid, and the fact that appellant had outstanding warrants gave the officers probable cause to arrest him. *See Haley v. State*, 480 S.W.2d 644, 645 (Tex. Crim. App. 1972) (stating that probable cause "clearly existed" for arrest when warrant check revealed outstanding warrants); *Brooks*, 76 S.W.3d at 434 ("[T]he fact that appellant had several outstanding warrants gave the officers probable cause to arrest him.").

Because we conclude that appellant's arrest was made pursuant to a valid warrant, we need not address the remainder of his first issue, in which he argues that he "suffered harm, as he could not have been arrested and searched incident to arrest without the defective failure to appear warrant."

We overrule appellant's first issue.

## Motion to Quash the Indictment

In his second issue, appellant argues that the trial court erred in failing to quash his indictment in cause number 1383990 for fraudulent use of identifying information. He argues that Penal Code section 32.51, the statute upon which his conviction was based, violates the right to free expression of personal views guaranteed by the First Amendment.

## A.  Standard of Review

We review de novo a trial court's ruling on a motion to quash an indictment. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). Likewise, we review the constitutionality of a criminal statute de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

When presented with a challenge to the constitutionality of a statute, we generally presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Ex parte Lo*, 424 S.W.3d at 14–15; *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The party challenging the statute has the burden to establish its unconstitutionality. *Ex parte Lo*, 424 S.W.3d at 15; *Rodriguez*, 93 S.W.3d at 69. To prevail on a general, facial challenge to the constitutionality of a criminal statute, the challenger must show that the statute always operates unconstitutionally, in all possible circumstances. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011). We must consider the statute only as it is written, rather than how it operates in practice. *State ex rel. Lykos*, 330 S.W.3d at 908.

Appellant was convicted pursuant to section 32.51(b), which he argues is unconstitutionally overbroad on its face because it criminalizes constitutionally protected speech in violation of the First Amendment to the United States

Constitution. A statute is impermissibly overbroad if it sweeps within its coverage "a substantial amount of" speech or other conduct protected by the First Amendment as compared to any activity it proscribes. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1982); *Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989); *Garcia v. State*, 212 S.W.3d 877, 887 (Tex. App.—Austin 2006, no pet.). We will not strike down a statute for overbreadth unless there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Garcia*, 212 S.W.3d at 888 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S. Ct. 2118, 2126 (1984)).

Appellant also argues that section 32.51(b) not only implicates the First Amendment, but that it is a content-based restriction on speech. When a criminal law seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed and the government bears the burden to rebut the presumption that a content-based regulation is invalid. *Ex parte Lo*, 424 S.W.3d at 15. Content-based regulations are "those laws that distinguish favored from disfavored speech based on the ideas expressed." *Id.* (citing *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643, 114 S. Ct. 2445, 2459 (1994)). If it is necessary to look at the content of the speech in question to decide if the speaker violated the

law, then the regulation is content-based. *Id.* at 15 n.12 ("For example, if a statute makes it a crime for an adult to communicate with a minor via the internet, that is a content-neutral law. But if the statute prohibits an adult from communicating with a minor in a sexually explicit manner, that is a content-based law because one has to look at the content of the communication to decide if the speaker violated the law.") (citing *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000)).

## B.    Penal Code section 32.51

Appellant argues that Penal Code section 32.51(b) is facially unconstitutional. Section 32.51 provides:

> (b) A person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of:
>
> > (1) identifying information of another person without the other person's consent;
> >
> > (2) information concerning a deceased natural person, including a stillborn infant or fetus, that would be identifying information of that person were that person alive, if the item of information is obtained, possessed, transferred, or used without legal authorization; or
> >
> > (3) identifying information of a child younger than 18 years of age.

TEX. PENAL CODE ANN. § 32.51(b) (Vernon Supp. 2015). The Penal Code further defines "identifying information" to mean "information that alone or in conjunction with other information identifies a person," including name, date of birth, or government-issued identification number, among other types of

information. *Id.* § 32.51(a)(1). The Penal Code also defines "harm" as meaning "anything reasonably regarded as loss, disadvantage, or injury." *Id.* § 1.07(a)(25) (Vernon Supp. 2015).

## C.     Law Regarding Whether Criminal Statute Implicates First Amendment

Appellant argues that section 32.51(b) "implicates the First Amendment as it imposes limits on the obtaining and use of identifying information." In *Ex parte Thompson*, the Court of Criminal Appeals analyzed whether a section of the Penal Code that prohibited the improper use of photography or visual recording done "with intent to arouse or gratify the sexual desire" of any person implicated the First Amendment. 442 S.W.3d 325, 330, 333–34 (Tex. Crim. App. 2014). It began its inquiry by determining whether the provision implicated the First Amendment. *Id.* at 334. It stated that "some conduct is inherently expressive" and cited examples such as parades and works of visual or literary art. *Id.* (citing *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 569, 115 S. Ct. 2338, 2345 (1995)); *see also Kaplan v. California*, 413 U.S. 115, 119–20, 93 S. Ct. 2680, 2684 (1973) ("As with pictures, films, paintings, drawings, and engravings, both oral utterance and the printed word have First Amendment protection until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution.").

The court also recognized, however, that some conduct is not inherently expressive but can still be conduct implicating the protections of the First Amendment. *See Ex parte Thompson*, 442 S.W.3d at 334 (citing *Texas v. Johnson*, 491 U.S. 397, 405, 109 S. Ct. 2533, 2540 (1989)). In cases where the prohibited conduct is not inherently expressive, the Court of Criminal Appeals has recognized a two-part test to determine whether conduct implicates the First Amendment. *Id.* "Under that test, conduct implicates the First Amendment if (1) there was an intent to convey a particularized message, and (2) the likelihood was great that the message would be understood by those who viewed it." *Id.* (citing *Johnson*, 491 U.S. at 404, 109 S. Ct. at 2539).[3]

In *Scott v. State*, the Court of Criminal Appeals considered whether the subsection of the harassment statute prohibiting harassment by telephone communication, Penal Code section 42.07(a)(4), implicated the First Amendment. 322 S.W.3d 662, 664–65, 668–69 (Tex. Crim. App. 2010), *abrogated on other grounds*, *Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014). The court held, "To answer the question of whether [a particular statute] implicates the free-speech

---

[3]     The Court of Criminal Appeals ultimately determined that the criminal statute at issue in *Thompson*—the "Improper Photography or Visual Recording Statute"— addressed conduct, i.e., photography, that the United States Supreme Court and others had previously determined to be inherently expressive acts. *See* 442 S.W.3d 325, 334–36 (Tex. Crim. App. 2014). It concluded that "photographs and visual recordings are inherently expressive, so there is no need to conduct a case-specific inquiry into whether these forms of expression convey a particularized message." *Id.* at 336. However, we conclude that such a case-specific inquiry is appropriate here.

20

guarantee of the First Amendment, we must first determine the protection afforded by the free speech guarantee, and then we must determine the meaning of [the challenged statute]." *Id.* at 668. It observed that the First Amendment "generally protects the free communication and receipt of ideas, opinions, and information." *Id.* (citing *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 390, 89 S. Ct. 1794, 1806 (1969) and *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S. Ct. 766, 769 (1942)). It further stated, "In a nation of ordered liberty, however, the guarantee of free speech cannot be absolute. The State may lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner." *Id.* at 668–69 (citing *Cohen v. California*, 403 U.S. 15, 21, 91 S. Ct. 1780, 1786 (1971)).

Turning to the meaning of statute at issue in *Scott*, the court quoted the relevant portion of the statute, which provided that "[a] person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . makes repeated telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id.* at 669 (citing TEX. PENAL CODE ANN. § 42.07(a)(4)). It observed that this statute requires "the specific intent to harass" or "inflict harm," that it requires repeated telephone calls to the victim, that it "requires that the actor make those telephone calls in a

21

manner reasonably likely to harass . . . or offend an average person," and that "the text does not require that the actor use spoken words." *Id.*

Based upon this examination of the text of section 42.07, the Court of Criminal Appeals concluded that the telephone harassment statute was "not susceptible of application to communicative conduct that is protected by the First Amendment" and that it did not "implicate the free-speech guarantee of the First Amendment." *Id.* It stated:

> The statutory subsection, by its plain text, is directed only at persons who, with the specific intent to inflict emotional distress, repeatedly use the telephone to invade another person's personal privacy and do so in a manner reasonably likely to inflict emotional distress. Given that plain text, we believe that the conduct to which the statutory subsection is susceptible of application will be, in the usual case, essentially noncommunicative, even if the conduct includes spoken words. That is to say, in the usual case, persons whose conduct violates [section] 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake. To the extent that the statutory subsection is susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner.

*Id.* at 669–70.

**D.     Section 32.51(b) Does Not Implicate the First Amendment**

This case is similar to *Scott*. Section 32.51(b) provides that a person commits an offense if he, "with the intent to harm or defraud another, obtains,

22

possesses, transfers, or uses an item of . . . identifying information of another person without the other person's consent." TEX. PENAL CODE ANN. § 32.51(b)(1). "Harm" means "anything reasonably regarded as loss, disadvantage, or injury." *Id.* § 1.07(a)(25). Similar to the statute at issue in *Scott*, section 32.51 requires the specific intent to harm or defraud and requires that the actor "obtains, possesses, transfers, or uses an item [of] identifying information" with that specific intent. *See id.* § 32.51(b); *Scott*, 322 S.W.3d at 669. Also as in *Scott*, section 32.51 does not specifically reference spoken words or other inherently communicative actions— like photographs or actual communications between adults and minors, as discussed in *Thompson* and *Lo*. *See* TEX. PENAL CODE ANN. § 32.51(b); *Ex parte Thompson*, 442 S.W.3d at 333–34; *Ex parte Lo*, 424 S.W.3d at 15 n.12; *Scott*, 322 S.W.3d at 669–70.

Here, as in *Scott*, we conclude that section 32.51(b) is "not susceptible of application to communicative conduct that is protected by the First Amendment" and does not "implicate the free-speech guarantee of the First Amendment." *See Scott*, 322 S.W.3d at 669. The type of conduct prohibited by section 32.51(b)— obtaining, possessing, transferring, or using identifying information with the intent to harm or defraud—is conduct that is "essentially noncommunicative, even if the conduct includes spoken words." *See id.* at 670. Such conduct does not indicate "an intent to convey a particularized message" with a great likelihood "that the

23

message would be understood by those who viewed it." *See Ex parte Thompson*, 442 S.W.3d at 334 (citing *Johnson*, 491 U.S. at 404, 109 S. Ct. at 2539). Nor does it impose on the "free communication and receipt of ideas, opinions, and information" as contemplated by the free-speech guarantee of the First Amendment. *See Scott*, 322 S.W.3d at 668 (citing *Red Lion Broad. Co.*, 395 U.S. at 390, 89 S. Ct. at 1806, and *Chaplinsky*, 315 U.S. at 571–72, 62 S. Ct. at 769).

And, as in *Scott*, to the extent that section 32.51(b) might be susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another—the victim—in an essentially intolerable manner by using his identifying information without his permission and with the intent to defraud or harm him. *See id.* at 669–70. Appellant argues that section 32.51(b) criminalizes "routine and innocuous activities" such as employers' performing background checks on potential employees or journalists' investigating corrupt practices that affect the public at large. However, these types of actions do not fall within the purview of section 32.51(b) because they do not constitute obtaining, possessing, transferring, or using identifying information *with the intent to harm or defraud* another. *See* TEX. PENAL CODE ANN. § 32.51(b).

We conclude that section 32.51(b) does not implicate the First Amendment.

24

**E.     Constitutionality of Section 32.51(b)**

Because we have concluded that section 32.51(b) does not implicate the First Amendment, we likewise conclude that the statute is not overbroad because it does not reach "a substantial amount of constitutionally protected conduct." *See Vill. of Hoffman Estates*, 455 U.S. at 494, 102 S. Ct. at 1191; *see also Garcia*, 212 S.W.3d at 889 (overruling facial challenge to Penal Code section 25.07, which criminalizes violating protective orders, because it does not reach "a substantial amount of constitutionally protected conduct"). We further hold that because section 32.51(b) does not implicate the First Amendment it is not a content-based restriction on speech. *See Ex parte Thompson*, 442 S.W.3d at 334.

Applying the general standard for reviewing a challenge to the constitutionality of a statute—presuming that the statute is valid and the legislature has not acted unreasonably or arbitrarily—we conclude that appellant has failed to meet his burden of establishing section 32.51(b)'s unconstitutionality. *See Ex parte Lo*, 424 S.W.3d at 15; *Rodriguez*, 93 S.W.3d at 69. He argues only that the statute was overbroad in that it imposed on the free-speech guarantees of the First Amendment—an argument we have rejected. Appellant has failed to demonstrate that the statute always operates unconstitutionally, in all possible circumstances. *See Rosseau*, 396 S.W.3d at 557; *State ex rel. Lykos*, 330 S.W.3d at 908.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.

Publish.  TEX. R. APP. P. 47.2(b).