**Opinion issued April 2, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00123-CR

———————————

## JUSTO ARMANDO JIMINEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1471970**

---

## MEMORANDUM OPINION

After appellant, Justo Armando Jiminez, with an agreed punishment recommendation from the State, pleaded guilty to the felony offense of theft,[1] the trial court deferred adjudication of his guilt and placed him on community

---

[1]     TEX. PENAL CODE ANN. § 31.03.

supervision for five years. The State, alleging numerous violations of the conditions of appellant's community supervision, subsequently moved to adjudicate his guilt. After a hearing, the trial court found true the State's allegation that appellant violated Texas Penal Code section 32.51[2] in violation of a condition of his community supervision prohibiting a "NEW LAW VIOLATION," found appellant guilty, and assessed his punishment at confinement for two years. In two issues, appellant contends that the trial court erred in adjudicating his guilt based on a new law violation because Texas Penal Code section 32.5[3] violates his First Amendment rights and that the trial court's judgment should be reformed to accurately reflect that appellant pleaded "not true" to the allegations in the State's motion to adjudicate his guilt.

We modify the trial court's judgment and affirm as modified.

## Background

On February 9, 2016, the trial court placed appellant on community supervision, subject to certain conditions. On March 27, 2017, the State filed a motion to adjudicate guilt, asserting that appellant had violated numerous conditions of his community supervision, including the condition that he "[c]ommit no offense against the laws of this or any other State of the United States."

---

[2]     *See* TEX. PENAL CODE ANN. § 32.51.

[3]     *See id.*

At the hearing on the State's motion to adjudicate guilt, appellant pleaded "not true" to the allegations in the State's motion.

Andrea Cruz, appellant's ex-girlfriend, testified that, in November 2016, she gave appellant permission to use her name and information to obtain a lease for an apartment. They were no longer in a romantic relationship at the time. Appellant asked Cruz for her help because they had a "close connection," and he knew that she did not "have any broken leases or [a] bad record." However, according to Cruz, she never agreed to assist him financially. Cruz provided appellant with her full name, telephone number, date of birth, social security number, home address, and driver's license number (her "identifying information"). She did not have any concerns with providing her identifying information to appellant because she "trusted him" and viewed him as a "hardworking man," who had "a good job" and was "responsible with his bills."

Several weeks after she provided her identifying information to appellant, Cruz received a letter in the mail from Speedy Cash regarding an account for a direct loan that was opened in her name. The loan was in the amount of $600. Cruz further testified that she did not open, or authorize anyone to open, the account. Upon request, Speedy Cash provided her with information associated with the account, which included her name and address, the name of the bank that received the $600 loan money, and appellant's cellular telephone number. She

3

further testified that she did not have an account with the bank to which Speedy Cash had transferred the loan money. Upon obtaining this information, Cruz filed a report with the Galena Park Police Department ("GPPD") "about the identity fraud" and "loan that was taken out" at Speedy Cash in her name without her authorization.

Cruz later confronted appellant, who denied having any knowledge about the account with Speedy Cash. However, he called her the following day and told her that he "figured out" who "did the fraud." Appellant told Cruz that a woman in the management office of his apartment complex must have committed the fraud because he had given her Cruz's information when leasing his apartment. He also told her that he discovered that this woman had "do[ne] this fraud to several other people, including himself."

GPPD Detective Monica Rollier testified that she was assigned to investigate Cruz's report of "a fraudulent use" of her "identifying information" in a "Speedy Cash loan application" for $600. Rollier reviewed the loan application with Cruz, who advised Rollier that the bank account, telephone number, and place of employment listed on the application did not belong to her. Further, Cruz was able to identify the telephone number and place of employment as being associated with appellant—her ex-boyfriend.

Detective Rollier obtained the records of the bank account listed on the Speedy Loan application by subpoena through the district attorney's office and ultimately determined that the account belonged to appellant. She further testified that she called the number listed on the Speedy Cash loan application, but never spoke with anyone. She could not recall if the voicemail greeting associated with the telephone number identified it as belonging to appellant. However, Cruz identified the telephone number as belonging to appellant.

Appellant testified that, in November 2016, Cruz was forced to move out of her parents' house. She asked appellant to borrow money to "get her own place." Although he did not loan her money, appellant helped her apply for a loan with Speedy Cash. Appellant and Cruz applied for the loan online together, but appellant testified that the purpose of the loan was to assist Cruz in paying for "her car and her rent." At the time, Cruz did not have a bank account, so appellant agreed to have the loan money sent to his personal bank account. Upon receiving the loan money, appellant withdrew the amount in cash and gave the cash to Cruz. Appellant testified that he did not "sign onto the loan" with Cruz, but "allow[ed] her to use [his] bank to send the money if she was approved for the loan."

Appellant testified that he and Cruz were still in a romantic relationship at the time that she obtained the loan. However, shortly after that time, appellant ended their relationship. He testified that Cruz was very upset about the breakup.

5

And a week after the breakup, he learned that there was a "a warrant out for [his] arrest" relating to alleged identity theft in regard to the loan.

After the hearing, the trial court found "true" the State's allegation that appellant had violated the condition of his community supervision requiring him to "NOT COMMIT ANY NEW LAW VIOLATION AGAINST THIS STATE OR ANY OTHER STATE," found him guilty, and assessed his punishment at confinement for two years.

## Standard of Review

Appellate review of an order adjudicating guilt is limited to determining whether the trial court abused its discretion. TEX. CODE CRIM. PROC. ANN. art. 42A.108(b) ("The determination [to adjudicate guilt] . . . is reviewable in the same manner as a [community-service] revocation hearing . . . in which the adjudication of guilt was not deferred."); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The trial court's decision must be supported by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763–64. The evidence meets this standard when the greater weight of the credible evidence creates a reasonable belief that a defendant has violated a condition of his community supervision. *Id.* at 764. We examine the evidence in the light most favorable to the trial court's order. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); *Jones v. State*, 787 S.W.2d 96, 97 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). As the sole trier of fact, a

trial court determines the credibility of witnesses and the weight to be given to their testimony. *See Garrett*, 619 S.W.2d at 174; *Jones*, 787 S.W.2d at 97.

### Constitutionality of Texas Penal Code Section 32.51

In his first issue, appellant argues that the trial court erred in adjudicating his guilt based on a finding that he violated Texas Penal Code section 32.51 of the Texas Penal Code, entitled "Fraudulent Use or Possession of Identifying Information," because that statute "[t]rigger[s] First Amendment [p]rotections." *See* TEX. PENAL CODE ANN. § 32.51.

We review the constitutionality of a criminal statute de novo as a question of law. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When presented with a challenge to the constitutionality of a statute, we usually presume that the statute is valid and the legislature has not acted unreasonably or arbitrarily. *Id.* at 14–15; *Rodriguez v. State,* 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). Therefore, the party challenging the statute normally carries the burden to establish its unconstitutionality. *Ex parte Lo*, 424 S.W.3d at 15. However, when a criminal law restricts speech based upon content, the usual presumption of validity is reversed, and the government must rebut the presumption that a content-based restriction is invalid. *Id.*; *Williams v. State*, 499 S.W.3d 498, 500 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). A regulation is content-based if one must

consider the content of the speech to determine if the speaker violated the law. *Williams*, 499 S.W.3d at 500 (citing *Ex parte Lo*, 424 S.W.3d at 15 n.12).

While a general facial challenge requires the challenger to show that the statute is unconstitutional in all applications, under the First Amendment's "overbreadth" doctrine, a law may be unconstitutional on its face even if it might have some legitimate applications. *State v. Johnson*, 475 S.W.3d 860, 864–65 (Tex. Crim. App. 2015); *Williams*, 499 S.W.3d at 500. However, the overbreadth doctrine is used "sparingly and only as a last result." *Johnson*, 475 S.W.3d at 865 (internal quotations omitted). The overbreadth of a statute must prohibit a substantial amount of protected expression relative to the statute's plainly legitimate sweep. *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016). And the danger that the statute will be unconstitutionally applied must be "realistic" and "not based on fanciful hypotheticals." *Williams*, 499 S.W.3d at 500. "Moreover, the overbreadth doctrine is concerned with preventing the chilling of protected speech and that concern attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct." *Johnson*, 475 S.W.3d at 865 (internal quotations omitted). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct that is necessarily associated with speech (such as picketing or demonstrating)." *Id.*

Appellant argues that Texas Penal Code section 32.51 is an overbroad, content-based restriction on speech and, thus, violates the First Amendment. Specifically, appellant argues that section 32.51 "explicitly regulates non-fraudulent expression based on content because it restricts the 'obtaining,' 'possession,' or 'use,' *i.e.*, the communication, of 'identifying information.'" However, he concedes that his claim is "foreclosed" by this Court's precedent and acknowledges that he is raising this issue "for purposes of preservation." Indeed, this Court has twice rejected the same arguments concerning Texas Penal Code section 32.51. *See Williams*, 499 S.W.3d at 502; *Horhn v. State*, 481 S.W.3d 363 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). And the doctrine of stare decisis creates a strong presumption that precedents should be followed to foster "efficiency, fairness, and legitimacy." *Grapevine Excavation, Inc. v. Md. Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000). It has its greatest force in matters of statutory interpretation because the Legislature can rectify a mistaken judicial interpretation, and if it does not do so, there is little reason for courts to reconsider a prior statutory construction. *Sw. Bell Tel. Co. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008). Consequently, we follow *Horhn* and *Williams*.

## A. Texas Penal Code section 32.51

The first step in an overbreadth analysis is to construe the challenged statute. *Johnson*, 475 S.W.3d at 871. Section 32.51 provides as follows:

9

(b)     A person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers or uses an item of:

    (1)     identifying information of another person without the other person's consent;

    (2)     information concerning a deceased natural person, including a stillborn infant or fetus, that would be identifying information of that person were that person alive, if the item of information is obtained, possessed, transferred, or used without legal authorization; or

    (3)     identifying information of a child younger than 18 years of age.

(b-1)   For the purposes of Subsection (b), the actor is presumed to have the intent to harm or defraud another if the actor possesses:

    (1)     the identifying information of three or more other persons;

    (2)     information described by Subsection (b)(2) concerning three or more deceased persons; or

    (3)     information described by Subdivision (1) or (2) concerning three or more persons or deceased persons.

Tex. Penal Code Ann. § 32.51(b), (b-1).  "Identifying information" is defined as "information that alone or in conjunction with other information" that identifies a person, including "name and date of birth," "unique biometric data, including the person's fingerprint, voice print, or retina or iris image," "unique electronic identification number, address, routing code, or financial institution account number," "telecommunication identifying information or access device," and

"social security number or other government-issued identification number." *Id.* at § 32.51(a)(1). And the Texas Penal Code defines "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *Id.* at § 1.07(a)(25).

**B. Section 32.51(b) does not implicate the First Amendment and is not unconstitutional as decided in *Horhn* and *Williams***

In *Horhn*, this Court held that Texas Penal Code section 32.51(b) does not implicate the free speech guarantees of the First Amendment.[4] *Horhn*, 481 S.W.3d at 376. We explored the difference between expressive conduct and non-communicative conduct. *Id.* While expressive conduct implicates the First Amendment, non-communicative conduct does not. *Id.* at 373. Here, we are concerned with how the conduct prohibited in section 32.51(b) fits into this framework.

The prohibited conduct can be divided into conduct intended to communicate and conduct intended to harm or harass. Conduct intended to communicate implicates the First Amendment protections if it is: (1) "inherently expressive," such as parades and works of visual or literary art or (2) it is not

---

[4] The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST., amend. I. It "generally protects the free communication and receipt of ideas, opinions, and information." *Scott v. State*, 322 S.W.3d 662, 668 (Tex. Crim. App. 2010), *abrogated on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014).

inherently expressive, but is intended to convey a "particularized message" and the message would likely be understood by those who viewed it. *Horhn*, 481 S.W.3d at 373 (citing *Ex parte Thompson*, 442 S.W.3d 325, 334 (Tex. Crim. App. 2014)). "In other words, prohibited conduct implicates the First Amendment if the statute proscribes conduct intended to communicate an understandable message." *Williams*, 499 S.W.3d at 501. Conversely, if conduct is intended to "harm or harass, then the statute focuses on the non-communicative part of the interaction, or the manner of communication, even if the conduct includes spoken words." *Id.*

In *Hornh*, this Court held that section 32.51 criminalized conduct that was "essentially non-communicative" and, therefore, did not criminalize protected speech on its face. 481 S.W.3d at 375–76. Further, to the extent that section 32.51 could be applied to communicative conduct, we determined that "it is susceptible of such application only when that communicative conduct . . . invades the substantial privacy interest of another . . . in an essentially intolerable manner by using his identifying information without his permission and with the intent to defraud or harm him." *Id.* (citing *Scott*, 322 S.W.3d at 669–70). This Court again affirmed this holding in *Williams*. *See* 499 S.W.3d at 501–02. And it has been followed by our sister court in *Ex parte Harrington*, 499 S.W.3d 142, 147 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Appellant argues that we should overrule this Court's precedent because the statute is "clearly so broad, it criminalizes legitimate communication under the guise of preventing fraud." He asserts that the statute criminalizes obtaining, possessing, transferring, or using information "that is not especially private, including 'name and date of birth.'" But the statute's reach cannot be considered without the limitations imposed by the requisite intent to "harm or defraud another." *See* TEX. PENAL CODE ANN. § 32.51(b). And the Court of Criminal Appeals has explained that the statute's "plain language . . . demonstrates" that its purpose is to "prevent identity theft." *Jones v. State*, 396 S.W.3d 558, 562 (Tex. Crim. App. 2013).

Appellant asserts that his argument is not foreclosed by the intent requirement of "harm or defraud" because this Court has not specifically addressed that the "sweeping breadth" of the term "harm" reaches "well beyond any conceivable criminal act predicated on a falsehood." The definition of "harm" in the Texas Penal Code is "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *See* TEX. PENAL CODE ANN. § 1.07(a)(25). Taken out of context, the word "disadvantage" could be susceptible to multiple and wide-ranging meanings. But section 32.51 criminalizes actions taken with intent to harm *or defraud*. And the statute, entitled "Fraudulent Use or Possession of Identifying Information," is

13

located in the Texas Penal Code's chapter addressing fraud.  Therefore, taken in context, the meaning of the word "harm" is "narrowed by the commonsense canon of *noscitur a scociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated."  *U.S. v. Williams*, 553 U.S. 285, 294 (2008) (explaining that use of the term "promotes" in "a list that includes 'solicits,' 'distributes,' and 'advertises,' is most sensibly read to mean the act of recommending purported child pornography to another person for his acquisition").  The term "harm," thus, is most sensibly read to prevent criminal acts predicated on falsehood or fraud and does not embrace situations well beyond that scope, as suggested by appellant.[5]  *See* TEX. PENAL CODE ANN. § 32.51(b); *SMI Realty Mgmt. Corp. v. Underwriters at Lloyd's London*, 179 S.W.3d 619, 625 n.2 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (observing under maxim of *noscitur a sociis*, meaning of word may be determined by reference to meaning of words associated with it).

Appellant's position is not strengthened by the fact that "the intent to harm or defraud another" is presumed if the defendant merely possesses "the identifying information of three or more persons."  *See* TEX. PENAL CODE ANN. § 32.51(b-1).  The Penal Code defines "possession" as "actual care, custody, or management."  TEX. PEN. CODE ANN. § 1.07(a)(39).  Black's Law Dictionary similarly defines

---

[5]  For the same reasons, appellant's argument that "this Court has elevated the stated purpose of the statute over its operation" is without merit.

possession in terms that suggest control of physical items, referring to it as "the exercise of dominion over property." *Possession*, BLACK'S LAW DICTIONARY (10th ed. 2014). Because the usual definition of the term assumes actual control or exercise of dominion over property, we construe possession in this context to require physical control of, or exercise of dominion over, identifying information in written or recorded form. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(39), 32.51; *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("If a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity."); *Goldberg v. State*, 95 S.W.3d 345, 373 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (explaining State cannot criminalize thoughts). This construction comports with the general purpose of the Texas Penal Code, which is to deal with actually or potentially harmful conduct. *See* TEX. PENAL CODE ANN. § 1.02.

Appellant provides the following examples of conduct that would be unconstitutionally prohibited: a journalist possessing a politician's name and birthdate "while researching and writing a column exposing that the politician had violated the law and criticizing that politician for their illegal actions" or a "voter . . . forward[ing] [a] candidate's name and date of birth with a message suggesting the recipient not vote for the candidate." But the statute does not criminalize the use of identifying information in political news articles or

15

possession of identifying information of a politician by a voter in researching political candidates. *Jones*, 396 S.W.3d at 562 (explaining statute's "plain language . . . demonstrates" its purpose is to "prevent identity theft"). As explained above, these examples do not meet the intent requirement of the statute, which is to harm or defraud another. *See id*; *see also Williams*, 499 S.W.3d at 501–02; *Horhn*, 481 S.W.3d at 375–76.

This Court previously rejected essentially the same hypotheticals in *Williams*, where the defendant argued that the statute "unconstitutionally criminalizes the use of identifying information in political attacks and for leverage in negotiation." 499 S.W.3d at 501 (rejecting following examples provided by defendant to argue section 32.51 criminalizes protected conduct: "releasing a birth certificate to prove a candidate's ineligibility for office; using voter registration records to prove an opponent voted in the other party's primary; providing criminal or bankruptcy records to the news media; and using a person's criminal record for concessions in a divorce proceeding"). Similarly, in *Horhn*, this Court rejected the defendant's argument that the statute criminalized "'routine and innocuous activities' such as employers[] performing background checks on potential employees or journalists[] investigating corrupt practices that affect the public at large" because "these types of actions do not fall within the purview" of the requisite intent to harm or defraud in section 32.51(b). 481 S.W.3d at 375.

Appellant has presented no compelling reason to overrule our prior precedent on this issue. Since Texas Penal Code section 32.51(b) does not implicate the First Amendment, the statute is also not overly broad because it does not reach a substantial amount of constitutionally protected speech. *Horhn*, 481 S.W.3d at 376. Accordingly, we hold that the trial court did not err in adjudicating appellant's guilt on this ground.

We overrule appellant's first issue.

**Modification of Judgment**

In his second issue, appellant argues that the trial court's judgment should be reformed to reflect that appellant pleaded "NOT TRUE" instead of "TRUE" to the allegations in the State's motion to adjudicate. The State concedes that the trial court's judgment does not accurately comport with the record in regard to appellant's plea.

"An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet ref'd)). It is clear from the record that appellant pleaded "not true" to all of the alleged community-supervision violations asserted in the State's

17

motion to adjudicate his guilt. We conclude that the portion of the judgment reflecting that appellant pleaded "true" to these allegations does not accurately comport with the record and should be corrected. *See, e.g.*, *id.*

Accordingly, we modify the trial court's judgment to state that appellant pleaded "NOT TRUE" to the alleged violations of his community supervision asserted in the State's motion to adjudicate his guilt. TEX. R. APP. P. 43.2(b); *see, e.g.*, *Rodriguez-Sanchez v. State*, 01-17-00344-CR, 2018 WL 1189106, at \*6 (Tex. App.—Houston [1st Dist.] Mar. 8, 2018, no pet.) (mem. op., not designated for publication) (reforming judgment to reflect defendant pleaded not true to allegations in State's motion to adjudicate).

We sustain appellant's second issue.

## Conclusion

We affirm the judgment of the trial court as modified.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).

18